37 P.3d 18

STATE of Idaho, Plaintiff–Respondent,

v.

Santiago Parmo MARTINEZ,
Defendant–Appellant.

No. 26718.

Court of Appeals of Idaho.

Nov. 23, 2001.

Parmenter Associates, Blackfoot, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Santiago Parmo Martinez appeals from his judgment of conviction and sentence for lewd conduct with a minor. We vacate.

## I.

## FACTS AND PROCEDURE

Martinez was charged with two counts of lewd conduct with a minor. I.C. § 18–1508. In count one, Martinez was charged with engaging in genital-to-genital contact with his five-year-old daughter. In count two, Martinez was charged with engaging in manual-to-genital contact with the same daughter.

During his jury trial, Martinez made several motions for mistrial on the grounds of prosecutorial misconduct, which the district court denied. After the jury began deliberating, two jurors sent a note to the district court inquiring what would happen if the jury could not reach a verdict on count two. The district court instructed the jury to continue deliberating. Thereafter, the jury found Martinez not guilty of count one but guilty of count two.

Martinez filed post-trial motions for a new trial and mistrial. Martinez claimed that he was deprived of a fair trial due to prosecutorial misconduct and the district court's instruction to the jury to continue deliberating after the two jurors sent the note. The district court denied Martinez's motions, finding that where prosecutorial misconduct had been shown, it resulted in harmless error. The district court sentenced Martinez to a unified term of eighteen years, with a minimum period of confinement of three years.

Martinez appeals. He argues that the district court erred by denying his motion for mistrial and abused its discretion by denying his motion for a new trial. Martinez also argues that the district court abused its discretion by denying probation, and he claims that his sentence is excessive.

## II.

## ANALYSIS

### A. Prosecutorial Misconduct

Martinez argues that the district court erred by denying his motion for mistrial based upon three incidents of prosecutorial misconduct that occurred during his trial. When reviewing a district court's denial of a motion for mistrial, the question on appeal is not whether the district court reasonably exercised its discretion in light of circumstances existing when the mistrial motion was made. *State v. Barcella,* 135 Idaho 191, 197, 16 P.3d 288, 294 (Ct.App.2000). The question is whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. *Id.* Thus, where a motion for mistrial has been denied in a criminal case, the abuse of discretion standard is a

misnomer. *Id.* The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. *Id.* The district court's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error. *Id.* Therefore, even after a finding of prosecutorial misconduct, a conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Pecor,* 132 Idaho 359, 367–68, 972 P.2d 737, 745–46 (Ct.App.1998). Where prosecutorial misconduct is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *Id.* at 368, 972 P.2d at 746.

### 1. Victim's testimony

The first alleged incident of prosecutorial misconduct occurred when the prosecutor elicited testimony from the five-year-old victim concerning possible oral-to-genital contact that Martinez was not charged with. The relevant testimony was as follows:

Pros.: Did your dad ever touch you anywhere besides your [vagina] with his [penis]?
Def.: Objection.
Court: Sustained. Rephrase the question.
Pros.: Other than your [vagina], where, if anywhere, did you[r] dad touch you with the [penis]?
Def.: Objection. Your Honor, it's beyond the scope of the pleadings.
Pros.: Your Honor, one of the elements is the intent to gratify.
Court: The objection is overruled.
Def.: Your Honor, may we have a sidebar?
[Sidebar off the record]
. . . .
Pros.: What part of the house would you go to after the touching was over?
Wit.: To watch cartoons.
Pros.: After the touching, did you ever go to the bathroom?
Wit.: Yes.
Pros.: Why?
Wit.: To spit out the pee pee that he put in my mouth.

Martinez's objection to this testimony was sustained by the district court. In addition, the victim's statement concerning the "pee pee" in her mouth was stricken, and the district court admonished the prosecutor to restrict his questions to the pleadings.

The next day, Martinez moved for a mistrial based upon the exchange between the prosecutor and the victim. Martinez informed the district court that the prosecutor had elicited the same testimony from the victim at Martinez's preliminary hearing and that, although Martinez did not object to the testimony at the preliminary hearing, the magistrate had also admonished the prosecutor to conform his questioning to the pleadings. Martinez claimed that the prosecutor had intentionally elicited the victim's testimony concerning possible oral-to-genital contact in order to inflame the jury.

In response, the prosecutor explained that he had information from an interview with the victim which indicated that Martinez put green aloe vera gel into the victim's vagina and that after he did this, the victim went into the bathroom to "push it out." The prosecutor stated that he intended to elicit this testimony from the victim rather than the testimony concerning possible oral-to-genital contact. The district court denied Martinez's motion for mistrial after expressing disappointment in the prosecutor for "walking a very dangerous line." The district court found that, although the testimony was prejudicial, its effect could be cured by an instruction to the jury.

In its order denying Martinez's post-trial motions, the district court concluded that the prosecutor questioned the victim about possible oral-to-genital contact in order to inflame the jury. The record supports the district court's determination. The prosecutor began the exchange at issue by asking the victim if Martinez ever touched her with his penis anywhere other than her vagina. The prosecutor undoubtedly knew this was outside the scope of the pleadings and the district court's admonitions thereon, especially in light of what occurred at the preliminary hearing and in light of the fact that the prosecutor never amended the complaint to include a charge of oral-to-genital contact after hear-

ing the victim's testimony at the preliminary hearing.

In addition, after a sidebar with the district court, the prosecutor did nothing to focus the victim's attention on the alleged manual touching by Martinez.[1] Before the sidebar, the prosecutor stopped with a question about whether Martinez ever touched the victim anywhere other than her vagina. When the prosecutor resumed questioning after the sidebar, he did not indicate to the victim that he only wanted to ask her questions about manual touching by Martinez. Instead, the prosecutor asked the victim a general question about what happened after "the touching." The record supports the district court's conclusion that the prosecutor's elicitation of testimony from the victim concerning possible oral-to-genital contact after the sidebar was calculated to inflame the jury and, therefore, constituted misconduct.

## 2. Investigating officer's testimony

■ The second alleged incident of prosecutorial misconduct occurred when the prosecutor attempted to question the investigating officer about a medical report that the district court had previously ruled was inadmissible hearsay. Prior to calling the investigating officer, the doctor who examined the victim testified. The prosecutor attempted to elicit the doctor's conclusion about whether the victim had been sexually abused but was unsuccessful because defense counsel's objections to the admissibility of the doctor's conclusion were sustained. After this unsuccessful attempt to elicit the doctor's conclusion, the prosecutor did not attempt to introduce the doctor's report into evidence. Thereafter, the state called the investigating officer, in part, to introduce a videotape of the officer's interview with Martinez. At one point during the videotaped interview, the officer read from the doctor's report and told Martinez that the report indicated there was "clear evidence of genital manipulation, sexual abuse." On cross-examination, counsel for Martinez questioned the officer about the

report. The officer admitted that the doctor's report did not state that there was clear evidence of sexual abuse. Defense counsel did not ask the officer what the doctor's report actually said.[2]

On re-direct, the prosecutor attempted to question the officer about what the report actually said. The relevant testimony is as follows:

Pros.: Did you mischaracterize the statement that was on that document?
Wit.: I don't believe so.
Def.: Objection. That's a self-serving question. I mean that's—I—I'd asked him, he quoted specifically from the document—
Court: Okay. Your objection is overruled. He can explain his answer.
Wit.: I wanted to impress on Mr. Martinez that we did have a doctor's report saying that she had been sexually abused.
Def.: Your Honor, that is not what that report says.
Court: And that wasn't what he said before so—
Def.: And that wasn't what he said before, and I object—
Court: Your objection?
Def.: Move that it be stricken.
Court: All right. It shall be stricken. The jury shall disregard it.
Pros.: Detective, what does the report say concerning the statement that you made to Santiago Martinez?
Def.: Objection. It's not in evidence.
Court: Sustained.
Pros.: The State moves for the document to be entered into evidence so that the jury can see it.
(State's Exhibit H was offered)
Def.: Foundation—
Court: Exhibit H—
Def.: —Your Honor.
Court: —has been offered, [Counsel].
Def.: Foundation, Your Honor.
Court: Sustained on foundation grounds. It's not—let's just say it doesn't fit in the—it's hearsay and it doesn't fit into the exceptions at

---

1. The propriety of the district court's evidentiary rulings throughout the trial are not before us. The issue is not whether any particular ruling was correct, but whether the prosecutor's ignoring those rulings was misconduct.

2. The doctor's report stated that there was "clear evidence of genital manipulation *consistent with* sexual abuse." (Emphasis added.).

this moment of the hearsay rule to be admitted.

Thereafter, the prosecutor attempted two more times to elicit the contents of the doctor's report from the officer. Martinez objected and eventually moved for a mistrial for the second time, claiming that the officer's statement that he had a doctor's report indicating that the victim was sexually abused was inflammatory and prejudicial. The prosecutor again claimed that the doctor's report was not hearsay because he was not introducing it in order to prove the truth of the matter contained therein—that the victim was sexually abused. Rather, the prosecutor claimed that he was merely attempting to rehabilitate the officer's credibility. The district court sustained Martinez's objection and did not allow the prosecutor to question the officer about what was stated in the report. Martinez argues that the prosecutor's continued questioning was misconduct because the doctor's report was not in evidence and it forced Martinez to object every time the prosecutor tried to elicit the contents of the report, thereby giving the appearance that Martinez had something to hide.

In its order denying Martinez's post-trial motions, the district court did not specifically find that the prosecutor's attempts to question the officer concerning the contents of the doctor's report amounted to prosecutorial misconduct. The district court concluded that even if Martinez had shown misconduct, it would not lead to dismissal of Martinez's judgment of conviction. At trial, the district court struck from the record, and instructed the jury to disregard, the officer's testimony that he wanted to impress on Martinez that he "did have a doctor's report saying that she had been sexually abused." Instead of moving on to another line of questioning, the prosecutor questioned the officer two more times about the contents of the doctor's report, which was not in evidence. We must conclude that the prosecutor disregarded the district court's ruling and, therefore, engaged in impermissible prosecutorial conduct. *See State v. Agundis,* 127 Idaho 587, 596–97, 903 P.2d 752, 761–62 (Ct.App.1995) (prosecutorial misconduct where prosecutor intentionally disregards district court's ruling that testi-

mony is inadmissible hearsay and attempts to elicit hearsay indirectly).

### 3. Prosecutor's closing argument

The third alleged incident of prosecutorial misconduct occurred during the prosecutor's closing argument to the jury. The prosecutor told the jury that the doctor who examined the victim "was prevented from saying certain things." Martinez's objection was sustained by the district court. In his post-trial motion for mistrial, Martinez claimed that the outcome of the case was substantially affected by the prosecutor's statement because it implied that, absent Martinez's objections, the doctor would have testified that the victim was sexually abused. The district court denied Martinez's motion for mistrial, concluding that the closing argument did not rise to prosecutorial misconduct. On appeal, Martinez argues that the prosecutor's comment implied to the jury that the doctor would have testified that the victim was sexually abused if he had been allowed to do so.

Counsel for both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Priest,* 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct.App.1995). However, it is generally recognized as improper for a prosecutor to make misstatements of the evidence during argument. *State v. Tupis,* 112 Idaho 767, 772, 735 P.2d 1078, 1083 (Ct.App.1987). In this case, objections during the doctor's testimony were sustained and the state was unable to place before the jury the doctor's ultimate conclusion. As previously discussed, the state was also prohibited from introducing the doctor's report into evidence. We agree with Martinez that it was misconduct for the prosecutor to then refer to evidence that was not admitted in an attempt to imply to the jury what that evidence would have been. It was also misconduct for the prosecutor to suggest that by making an objection that was sustained by the district court, Martinez has "prevented" the jury from hearing damaging evidence.

 Having found prosecutorial misconduct in all three instances complained of by Martinez, we must now determine whether it was harmless error. Regarding the first instance, the victim's testimony that she went to the bathroom to spit out the "pee pee" in her mouth was highly prejudicial to Martinez. Although ordinarily it may be presumed that a jury will abide by the district court's instruction to disregard anything that has been improperly placed before it, an instruction not to consider inadmissible testimony does not always cure the error. *See Young v. Price,* 48 Haw. 22, 395 P.2d 365, 368 (1964). The error is not cured when it is likely that the adverse effect of the improper testimony might not be eradicated by the instruction. *Id.* We conclude that the victim's testimony in this particular case left an impression upon the jury that was unlikely to be dispelled by the district court's instruction. Regarding the second instance, the prosecutor blatantly disregarded a ruling of the district court in order to try to get before the jury the doctor's conclusion and medical report that had been ruled inadmissible by the district court. Regarding the third instance, the prosecutor argued to the jury a fact that he was unable to present to the jury during trial and implied that Martinez had prevented the jury from hearing important evidence. The prosecutorial misconduct, therefore, had a continuing impact throughout Martinez's trial. *See Barcella,* 135 Idaho at 197, 16 P.3d at 294. In addition, the record indicates that the victim's testimony and the report and conclusion by the doctor were two pivotal pieces of evidence used to prove Martinez's guilt. Martinez was acquitted on count one and the jury was in some disagreement on count two as reflected by the note sent to the district court during the jury's deliberations. Accordingly, we are unable to conclude beyond a reasonable doubt that the jury's verdict would not have been different absent the three instances of prosecutorial misconduct in this case.

### III.

### CONCLUSION

Because the three instances of prosecutorial misconduct had a continuing impact on

Martinez's trial and were not harmless error, we conclude that the district court erred by denying Martinez's motion for a mistrial. Therefore, Martinez's judgment of conviction is vacated. Due to our disposition of this issue on appeal, it is unnecessary for us to reach the additional issues raised by Martinez.

Chief Judge SCHWARTZMAN and Judge LANSING, CONCUR.