205 P.3d 671

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Frank GERARDO, Defendant–Appellant.**

**No. 33450.**

Court of Appeals of Idaho.

Jan. 7, 2009.

Review Denied April 16, 2009.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

LANSING, Chief Judge.

Frank Gerardo appeals from his convictions for burglary and attempted robbery, with a sentence enhancement for use of a firearm. He contends that the district court made errors in the evidentiary phase of the trial, that the trial evidence was insufficient to sustain the jury's finding that he was one of the perpetrators, that the district court made multiple errors in instructing the jury,

and that the court erred in denying Gerardo's post-trial motion to correct an illegal sentence. We affirm the convictions for attempted robbery and burglary, but vacate the portion of Gerardo's sentence that was imposed for the firearm enhancement.

## I.

## BACKGROUND

On January 24, 2006, three masked men wearing dark clothing, one with a blue bandana, entered the Lotus Garden restaurant brandishing firearms. They demanded money from the owner, Hong Ha, and Ha's daughter, Karen, and threatened to shoot them if they did not comply. When the men realized that Hong's wife was on the telephone with the police in another portion of the restaurant, they fled the building, got into a white Pontiac Grand Prix, and sped away.

The police soon located the automobile, and a high-speed chase ensued during which one or more of the Pontiac's occupants shot at the pursuing officers. The chase ended when the Pontiac's driver lost control and drove into an irrigation canal. The vehicle occupants fled on foot and avoided immediate apprehension. A short time later, however, Keith Ogburn was found lying in a field and was taken into custody. Johnny Gonzalez was arrested after he was discovered hiding in the weeds on the bank of the canal. He was sporting a blue bandana around his neck. About two and one-half hours after the search was initiated, Gerardo was seen walking down a residential street near the crash scene and was also arrested. All three of the men were wearing dark clothing and were cold, muddy and wet from the waist down.

The three men were indicted for burglary, Idaho Code section 18–1401, and attempted robbery, I.C. §§ 18–6501, –306, and the indictment sought an enhancement of their burglary sentences for use of a firearm in the course of that crime, I.C. § 19–2520.[1] The three men were tried together and none of them testified.

Hong Ha and Karen Ha testified that three gun-toting men had entered the restaurant, and no evidence of a fourth man was ever presented. However, through cross-examination of the officers who pursued the Pontiac, Gerardo attempted to show the possibility that the getaway car may have contained more than three men because the officers could not see how many persons were in the car. This cross-examination raised a potential defense that although Gerardo was in the car, he had not entered the restaurant to participate in the burglary and robbery. As a result of this cross-examination, the district court instructed the jury that Gerardo would be guilty if he was found to have aided or abetted a crime.

Gerardo was found to be guilty of both felonies and subject to the sentence enhancement for use of a firearm. The district court imposed a unified sentence of ten years with five years determinate for burglary, a consecutive unified sentence of fifteen years with seven and one-half years determinate for attempted robbery, and a separate, consecutive unified sentence of fifteen years with seven and one-half years determinate for the firearm enhancement. Gerardo subsequently filed a motion to vacate the firearm enhancement, contending that it was illegal because the jury was erroneously instructed regarding the enhancement. The district court denied the motion.

Gerardo appeals, asserting several trial errors and error in the denial of his motion to eliminate the sentence enhancement.

## II.

## ANALYSIS

Gerardo asserts that the district court made several errors in the admission of evidence or failure to strike evidence at trial. We will consider each of these separately and then determine whether any errors, when considered cumulatively, necessitate a reversal of Gerardo's convictions.

1. Gonzalez was also charged with felony eluding.

## A. Evidentiary Issues

### 1. Co-defendant Gonzalez's statement of his residence address

■ When booked following their arrest, Gerardo and Gonzalez gave the same residence address on 21st Avenue South in Nampa. Gerardo filed a motion in limine to exclude Gonzalez's booking statement regarding his address on the ground that it was inadmissible hearsay as to Gerardo. The district court overruled the hearsay objection, stating that the two men's statements were non-hearsay admissions of a party opponent. Gerardo claims error, arguing that Gonzalez's statement was inadmissible hearsay when used against Gerardo.

An out-of-court statement admitted for the truth of its content is hearsay, Idaho Rule of Evidence 801(c), and hearsay is not admissible except as provided by the Rules of Evidence. I.R.E. 802. However, a party's own out-of-court statement does not constitute hearsay when proffered against that party. I.R.E. 801(d)(2).[2] The district court's ruling that Gonzalez's statement of his residence address was an admission of a party opponent when proffered *against Gerardo* was incorrect. Subject to exceptions that are not pertinent here, a nonjudicial statement is admissible under Rule 801(d)(2), only as against the party who made the statement or on whose behalf it was made. I.R.E. 801(d)(2); *Sammis v. Magnetek, Inc.*, 130 Idaho 342, 350–51, 941 P.2d 314, 322–23 (1997). Therefore, the State was entitled to introduce Gonzalez's statement to prove its case against Gonzalez, but as to Gerardo, the statement was hearsay. No hearsay exception was identified either during the trial or on this appeal that would make Gonzalez's

statement to the booking officer admissible against Gerardo.

On appeal, the State argues that both men's out-of-court statements providing a common address were not hearsay because they were not offered to prove the truth of the statements—that the men lived at a certain address. Rather, the State asserts the evidence served a non-hearsay purpose, because both men giving the same address was circumstantial evidence of a link between them, regardless of whether the stated address was their true address. This may be so, *see State v. Agundis*, 127 Idaho 587, 593–94, 903 P.2d 752, 758–59 (Ct.App.1995), but the district court never indicated that it was admitting Gonzalez's statement against Gerardo for this limited purpose and, if it had, Gerardo would have been alerted to the opportunity to request a limiting instruction, restricting the jury's use of this evidence to this limited purpose. *See* I.R.E. 105;[3] *Cook v. Skyline Corp.*, 135 Idaho 26, 32–33, 13 P.3d 857, 863–64 (2000); *State v. Cordova*, 137 Idaho 635, 641, 51 P.3d 449, 455 (Ct.App. 2002). Because the district court did not admit the evidence for a limited purpose, we conclude that Gonzalez's statement was erroneously admitted at trial against Gerardo for the truth of the matter asserted, i.e., that Gonzalez lived at that address.

### 2. Gonzalez's statement regarding disposal of the guns

■ The prosecutor asked a testifying police officer what Gonzalez had said at the scene of his arrest about the location of the guns. Gerardo made a hearsay objection. The district court overruled the objection, stating that the testimony was not hearsay. The officer then testified that Gonzalez "advised that there were no guns on the scene;

---

**2.** Idaho Rule of Evidence 801(d)(2) provides that a statement is not hearsay if:

> The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by a party to make a statement concerning the subject, or (D) a statement by a party's agent or servant concerning a matter within the scope of the agency or employment of the servant or agent,

made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

**3.** Idaho Rule of Evidence 105 provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

that they had been thrown out of the window." Gerardo asserts error in the admission of this evidence.

The district court erred for the reasons identified in the preceding section. The State suggests that this evidence was not hearsay because it was not offered to prove the truth of Gonzalez's statement but, rather, for the non-hearsay purpose of explaining the officers' subsequent actions of searching for the guns along the route of the high-speed chase. Again, because the district court did not indicate that it was admitting Gonzalez's statement against Gerardo for this limited purpose, which would have notified Gerardo of the possibility of a limiting instruction, we cannot sustain the admission of the statement on the ground now urged by the State. Because the district court did not admit the evidence for a limited purpose, Gonzalez's statement was erroneously admitted at trial against Gerardo for the truth of its content.

### 3. The prosecutor's "testimony" in front of the jury

■ Gerardo next contends that the district court erred by denying his motion to strike a statement made by the prosecutor in the presence of the jury. On direct examination, victim Hong Ha testified that when the intruders fled, he followed them out of the restaurant and saw them enter an automobile, and that he could see there was no fourth person waiting in the car. On cross-examination by Gerardo, Ha admitted that he had not previously told any investigating officer or anyone from the prosecutor's office that he had seen the perpetrators get into the vehicle. At this point in defense counsel's cross-examination, the prosecutor interrupted and stated in front of the jury:

> I'll represent to the court and counsel that I interviewed Mr. Ha for the first time in my office in the last few days. I asked him, at that time, whether he saw or was in a position to see the persons who left the restaurant go into the car. And he indicated to me, at that time, that he was

in a position to see that. So, I had heard that before. I heard counsel ask him had he ever said that to law enforcement or a prosecutor. I was present when he told me a couple of days ago, Judge.

No objection was made at that time, but later in the trial Gerardo moved to strike the prosecutor's comment. The prosecutor responded that he had acted as an officer of the court in disclosing this information in the way that he did. The district court ruled:

> The witness had obviously misspoke from the witness stand about whom he had discussed the case with. And it is the duty and obligation while they're on the witness stand for counsel to correct the record. So that's how the court looked at it, and so the court will decline to grant the motion to strike.

The denial of Gerardo's motion to strike the prosecutor's statement was error. This description to the jury of the prosecutor's version of his discussions with the witness was improper unsworn testimony by the prosecutor. No person may testify in court unless first placed under oath. I.R.E. 603. By contradicting Mr. Ha's testimony this way in front of the jury, the prosecutor, in effect, presented his own unsworn testimony in violation of this rule and in violation of I.R.E. 103(c).[4] In addition, it constitutes misconduct for a prosecutor to place before the jury facts not in evidence. *State v. Griffiths*, 101 Idaho 163, 166, 610 P.2d 522, 525 (1980); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct.App.2007). This Court is unaware of any provision of law allowing an attorney to "correct" a witness's testimony in this manner before the jury. If an attorney believes that a witness has misspoken on the stand, the proper procedure is to revisit the testimony on redirect examination of the witness.

We interpret the district court's remarks as expressing a view that the prosecutor was merely complying with his ethical obligation not to allow the presentation of false testimony. *See* Idaho Rule of Professional Conduct

---

4. Idaho Rule of Evidence 103(c) provides:
   In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

3.3(a)(3). However, the appropriate procedure to discharge this ethical obligation is not for the lawyer to present to the jury his or her own conflicting testimony. If the perceived error in Mr. Ha's testimony could not be corrected on redirect examination, the prosecutor should have taken the matter up with the court and defense counsel outside the presence of the jury to allow defense counsel and the court to participate in fashioning any remedy that might be appropriate.

Having determined that the prosecutor's conduct violated the Idaho Rules of Evidence and that Gerardo's motion to strike the statement should have been granted, we need not address the further argument that Gerardo's constitutional right of confrontation was violated because the prosecutor was not subject to cross-examination.

### 4. Whether the evidentiary errors require a new trial

We have held that three errors occurred during the evidentiary phase of the trial. Even if each of these errors was harmless in itself, the cumulative prejudicial effect of several errors may necessitate a reversal of a jury verdict. *See State v. Field,* 144 Idaho 559, 572–73, 165 P.3d 273, 286–87 (2007); *State v. Cook,* 144 Idaho 784, 791, 171 P.3d 1282, 1289 (Ct.App.2007). We will hold evidentiary errors harmless if we conclude beyond a reasonable doubt that the jury would have reached the same verdict if they had not heard the challenged evidence. *Field,* 144 Idaho at 572, 165 P.3d at 286; *State v. Robinett,* 141 Idaho 110, 113, 106 P.3d 436, 439 (2005). Even after a finding of prosecutorial misconduct, a conviction will not be set aside for small errors or defects that would not have changed the results of the trial. *State v. Martinez,* 136 Idaho 521, 523, 37 P.3d 18, 20 (Ct.App.2001); *State v. Pecor,* 132 Idaho 359, 367–68, 972 P.2d 737, 745–46 (Ct. App.1998). Whether an error is harmless in a particular case depends upon a host of factors, including the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *State v. Hooper,* 145 Idaho 139, 146, 176 P.3d 911, 918 (2007); *State v. Green,* 136 Idaho 553, 557–58, 38 P.3d 132, 136–37 (Ct.App.2001).

█ The error in the admission against Gerardo of Gonzalez's statement of his residence address was entirely harmless for a number of reasons. First, the only probative value of this evidence of a common address was to show a link between Gonzalez and Gerardo, and it would have been admissible if properly proffered for this limited purpose. It had no prejudicial content when considered for the impermissible hearsay purpose—the truth of the address given to the booking officer. The prosecutor actually used the evidence only for the proper purpose, arguing in closing that Gonzalez's and Gerardo's statements of a common address established that "these guys all know each other." Second, Gonzalez's girlfriend testified that this street address was where she, Gonzalez and Gerardo all lived. Therefore, the erroneously admitted evidence was merely cumulative.

█ The admission of Gonzalez's statement about the guns being thrown from the car was also thoroughly harmless. Gerardo was not named in any of this testimony, and it did not implicate him in any way. The testimony was also inconsequential because officers testified that three guns were later found along the chase route, which demonstrated that the weapons had been thrown from the escape vehicle.

█ The prosecutor's statement in front of the jury is more troubling, but we conclude that it also was harmless. In cross-examining Mr. Ha, defense counsel was attempting to impeach Ha's testimony about the absence of a fourth man in the getaway car by emphasizing that Ha had not previously revealed this observation in his statements to the police or to the prosecutor. Gerardo asserts that the prosecutor's contradiction of Ha's cross-examination testimony rehabilitated this prosecution witness and undercut Gerardo's defense that although he may have been in the getaway car, he was not one of

the gun-wielding perpetrators that entered the restaurant. We do not agree with Gerardo's assessment that the prosecutor's statement diminished Gerardo's impeachment of Ha. The prosecutor did not contradict Ha's admission that he had never mentioned to investigating officers that he could see into the getaway car as the perpetrators entered it. Rather, the jury remained informed that Ha had not revealed this observation to any state agent until he met with the prosecutor days before trial. The impeachment potential of this circumstance, with the implication of some revision of Ha's story after speaking with the prosecutor, is equal to the impeachment value of the circumstance that was contradicted by the prosecutor's statement. Further, no actual evidence of the existence of any fourth man in the automobile was ever presented at trial. Gerardo's efforts to suggest the possibility that he was a fourth man solely by cross-examining police officers about their inability to see how many men were in the car was an extremely thin reed on which to predicate a defense.

Finally, and most importantly for our harmless error analysis, the strength of the State's case establishing the identity of the three defendants as the intruders was compelling. When apprehended by police, all three of the men were wearing dark clothing, like those who attempted to rob the restaurant, and Gonzalez was wearing a blue bandana, like one of the perpetrators. During the robbery attempt, one of the intruders called another one "Johnny," which is Gonzalez's first name. After chasing a white Grand Prix that matched the description of the getaway vehicle, and that ultimately crashed into an irrigation ditch, the police soon apprehended the three defendants. All three were wet and muddy. Although Gerardo was found a few blocks away from the crash site two and one-half hours later, the circumstances emphatically suggested that he had been in the crashed vehicle. He was walking through a residential neighborhood after midnight in wet, muddy clothing. His implausible explanation to police was that he was lost and had been walking around for ten hours after having been dropped off in the area by two females, whose names he did not know. Additional circumstantial evidence linked the three men to the crimes and to each other. An employee of the restaurant, Rosemary Torres, testified that she, her daughter, Gonzalez, and Ogburn ate dinner in the restaurant earlier on the night in question. She said that Gonzalez was her boyfriend, that Gerardo was dating her sister, and that she, Gonzalez, and Gerardo lived at the same residence on 21st Avenue South in Nampa. Torres said that Gonzalez and Gerardo left home on the evening in question, a short time before the crimes occurred.

Given the strength of this evidence of Gerardo's guilt and the comparatively slight impact that the prosecutor's improper remark had on Gerardo's impeachment of Mr. Ha's testimony, and given the complete innocuousness of the other evidentiary errors, we are convinced beyond a reasonable doubt that the jury's verdict would have remained the same absent the cumulative effect of these errors.

### B. Sufficiency of the Evidence

Gerardo next argues that his convictions cannot stand because insufficient evidence was adduced at trial to support the jury's verdict that he was one of the perpetrators of the burglary and attempted robbery.

■ The contention is meritless. An appellate court will not overturn a judgment of conviction, entered upon a jury verdict, where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Sheahan*, 139 Idaho 267, 285, 77 P.3d 956, 974 (2003); *State v. Johnson*, 136 Idaho 701, 704, 39 P.3d 641, 644 (Ct.App.2001). The evidence discussed above, demonstrating the harmlessness of the evidentiary errors, plainly constitutes substantial evidence to support the jury's verdict that Gerardo was one of the perpetrators of the crimes.

### C. Jury Instructions

■ Gerardo asserts that there were several errors in the instructions given to the jury. He made no objections to those in-

structions at trial, but argues that we may address the asserted errors under the fundamental error doctrine. *See State v. Johnson*, 145 Idaho 970, 977, 188 P.3d 912, 919 (2008) (saying that an appellate court will review fundamental errors in jury instructions in the absence of an objection below); *State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007). An error is fundamental if it "goes to the foundation or basis of a defendant's rights or [goes] to the foundation of the case or take[s] from the defendant a right which was essential to his defense and which no court could or ought permit him to waive." *State v. Knowlton*, 123 Idaho 916, 918, 854 P.2d 259, 261 (1993); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). Fundamental error has also been defined as error that "so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his fundamental right to due process." *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992); *Anderson*, 144 Idaho at 748, 170 P.3d at 891.

### 1. Aiding and abetting instruction

▬ Gerardo contends that because the indictment charged him as a direct participant and not as aiding and abetting others in the burglary and attempted robbery, his due process rights were violated when the district court gave an aiding and abetting instruction to the jury. He maintains that the instruction constituted an impermissible constructive amendment to the indictment.

Our Supreme Court recently rejected this contention in *Johnson*, which states, "because Idaho has abolished the distinction between principals and aiders and abettors, and because it is well-established in Idaho that it is unnecessary to charge the defendant with aiding and abetting, we hold there was no variance, constructive amendment, or due process violation" in the giving of an aiding

and abetting instruction. *Johnson*, 145 Idaho at 977, 188 P.3d at 919.

### 2. Failure to give a unanimity instruction on aider and abettor versus principal

▬ Gerardo next contends the district court should have given an instruction requiring that the jury unanimously find whether Gerardo was a principal in the offenses or was an aider and abettor. This issue was also resolved unfavorably to Gerardo in *Johnson*. There our Supreme Court concluded that "it is unnecessary to instruct the jury that it must be unanimous as to the theoretical basis for committing the offense (aider and abettor or principal) because aiding and abetting is not a separate offense from the substantive crime." *Id.* at 978, 188 P.3d at 920.

### 3. Instructions on the firearm enhancement

▬ Idaho Code section 19–2520 authorizes an extended term of imprisonment for persons who displayed, used, threatened, or attempted to use a firearm while committing or attempting to commit certain felonies, including burglary.[5] The statute does not label such conduct a separate crime, but instead operates to extend by fifteen years the maximum term of imprisonment that may be imposed for the crime in which the weapon was used.[6] *State v. Farwell*, 144 Idaho 732, 736, 170 P.3d 397, 401 (2007); *State v. Smith*, 103 Idaho 135, 137, 645 P.2d 369, 371 (1982); *State v. Kaiser*, 106 Idaho 501, 502, 681 P.2d 594, 595 (Ct.App.1984). The indictment against Gerardo invoked this statute, alleging that he used a firearm in the commission of the burglary. Gerardo claims several errors were made in instructing the jury regarding this sentence enhancement.

---

5. Idaho Code section 19–2520 provides in part: Any person convicted of a violation of . . . 18–1401 (burglary defined) . . . who displayed, used, threatened, or attempted to use a firearm or other deadly weapon while committing or attempting to commit the crime, shall be sentenced to an extended term of imprisonment. The extended term of imprisonment authorized in this section shall be computed by increasing the maximum sentence authorized for the

crime for which the person was convicted by fifteen (15) years.

6. In this case the firearm enhancement was erroneously charged as a substantive crime, and the district court erroneously imposed the sentence enhancement as if it were a sentence for a separate crime. These errors do not affect the disposition of this appeal.

Gerardo first complains that although the indictment alleged only that he used a firearm in the burglary, a jury instruction and special verdict form told the jury to determine whether Gerardo employed a firearm in the commission of "a crime," thus allowing application of the enhancement if the weapon was used in *either* the burglary or the attempted robbery. Gerardo asserts that this instruction [7] and verdict form [8] effectively altered the charges against him and amounted to an impermissible constructive amendment of the indictment. We agree.

▉▉▉▉ In this state, no one may be tried for a felony except upon a presentment or indictment of a grand jury or upon a prosecutor's information filed after commitment by a magistrate. Idaho Constitution Article I, § 8. Therefore, an amendment that charges a crime of greater degree or of a different nature than that for which the accused was indicted or bound over by the committing magistrate is constitutionally barred. *Johnson*, 145 Idaho at 973, 188 P.3d at 915; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct.App.1993). This constitutional constraint is also reflected in I.C. § 19–1420, which prohibits an amendment that would "charge an offense other than that for which the defendant has been held to answer," and Idaho Criminal Rule 7(e), which authorizes the amendment of an information or indictment at any time before the prosecution rests "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Where a jury instruction has the effect of altering the charge against a defendant to such an extent

that an amendment of the same scope to the charging document would be prohibited, the statutory and constitutional limitations are violated. *Colwell*, 124 Idaho at 566, 861 P.2d at 1231.

It may be thought that because, under I.C. § 19–2520, the use of a firearm in the commission of a crime only enhances the defendant's sentence and is not an element of the underlying offense, the constitutional, statutory, and rule-based limitations on amendments to charging documents would not apply. That is incorrect, however, because section 19–2520 itself specifies that the enhancement may be imposed only if the use of a firearm in committing the crime "is separately charged in the information or indictment" and is either admitted by the accused or found to be true by the fact-finder. This provision of I.C. § 19–2520 conveniently ensures conformity with United States Supreme Court authority holding that the constitutional rights to due process and to a jury trial require that any fact that would subject an accused to an increased penalty beyond the otherwise applicable maximum must be treated, for purposes of pleading and proof, as an element of the offense rather than a mere sentencing factor. *See Harris v. United States*, 536 U.S. 545, 557, 122 S.Ct. 2406, 2414, 153 L.Ed.2d 524, 537 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435, 446 (2000); *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311, 326 n. 6 (1999). Thus, although a fact justifying an I.C. § 19–2520

---

7. Jury Instruction No. 31 stated:
    If you find a defendant guilty of robbery or burglary, you must next consider whether a defendant displayed, used, threatened or attempted to use a firearm in the commission of the crime.
    . . . .
    If you unanimously find beyond a reasonable doubt that a defendant used, displayed, threatened with or attempted to use a firearm in the commission of the above crime, then you must so indicate on the verdict form submitted to you. If, on the other hand, you cannot make such a finding, then you must make that indication on the verdict form.

8. The verdict form requested the jury to respond to questions as follows:

We, the Jury, unanimously find the defendant FRANK GERARDO
    Question No. 1: As to Count I: Burglary
    _____ Not Guilty
    _____ Guilty
    Question No. 2: As to Count II: Attempted Robbery
    _____ Not Guilty
    _____ Guilty
    If you answered Guilty to Question No. 1 and/or Question No. 2, then you must answer Question No. 3.
    Question No. 3: As to Count III: Did Frank Gerardo use a firearm during the commission of a crime?
    _____ No
    _____ Yes

 

sentence enhancement is not one of the statutory elements of the charged offense, it is required to be a component of the charging document and hence is subject to the strictures on amendments to the charging document.

Here, the challenged jury instruction and verdict form allowed application of the firearm enhancement if the jury found that Gerardo used a firearm in the attempted robbery, even though the indictment alleged use of a weapon only as to the burglary, thus subjecting Gerardo to a maximum sentence fifteen years longer than the otherwise applicable maximum sentence for attempted robbery. That is, the instructions allowed for additional punishment on the finding of additional facts that were not charged. This constituted a constructive amendment to the indictment and was fundamental error.

This error in the jury instructions regarding the firearm enhancement also precludes applying the enhancement to the burglary sentence because the instructions did not require the jury to unanimously find whether a firearm was used in the burglary, the only offense for which the use of a firearm was alleged in the indictment.[9] Therefore, the instructions did not comply with the United States Supreme Court's holdings in *Harris, Apprendi* and *Jones* requiring that facts which would justify increasing the sentencing range be found by a jury beyond a reasonable doubt.

## III.

## CONCLUSION

Gerardo's judgment of conviction for burglary and attempted robbery is affirmed, but that portion of his sentence imposed as an enhancement for use of a firearm is vacated,

and the case is remanded for entry of an amended judgment.[10]

Judge GUTIERREZ and Judge Pro Tem SCHWARTZMAN concur.

---

**9.** Although the indictment requested the firearm enhancement only with respect to the crime alleged in Count I, which was burglary, the allegations in Count II, which charged the attempted robbery, specifically alleged that in attempting to rob Ha and his daughter, "The defendants pointed and/or brandished guns toward Hong Ha and Karen Ha and threatened to kill Karen Ha if they did not receive money," while the allegations in the burglary count make no mention of use of a firearm. This content of the indictment would seem to greatly increase the likelihood that the jury found the firearm enhancement more pertinent to the attempted robbery than to the burglary.

**10.** We imply no opinion whether the allegations for a firearm enhancement may be retried on remand separately from the trial on the underlying burglary charge. *See* I.C. § 19–2520.