# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38695

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 395 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 8, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| REGINA AMELIA MAYNARD, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Judgment of conviction for manufacturing a controlled substance, trafficking in marijuana, possession of a controlled substance with the intent to deliver, possession of methamphetamine, and possession of drug paraphernalia, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Regina Amelia Maynard appeals from the judgment of conviction entered upon the jury verdict finding her guilty of manufacturing a controlled substance, trafficking in marijuana, possession of a controlled substance with the intent to deliver, possession of methamphetamine, and possession of drug paraphernalia. Specifically, Maynard challenges the district court's orders denying her motion for a mistrial and precluding her from cross-examining a witness about the potential penalties of the witness's criminal charges. We affirm.

## I.

## FACTS AND PROCEDURE

Maynard was arrested following the search of her house pursuant to a search warrant. The search revealed drug paraphernalia, methamphetamine, marijuana, and two rooms devoted to growing marijuana plants. Prior to trial, Maynard filed a motion in limine to preclude

1

testimony that she was pushing a baby stroller at the time the warrant was executed. The State disagreed with the basis for the motion but, nonetheless, indicated that the State's witnesses would be advised not to mention the stroller. At trial, a police officer testified that prior to the search a detective "observed a female that was at the house with a baby stroller." Following the witness's testimony, defense counsel moved the court for a mistrial, claiming the statement "tainted" the jury. The district court denied the motion.

Later, the State called Maynard's mother, Christine, to the witness stand. Christine lived with Maynard and was facing similar criminal charges. During cross-examination, defense counsel asked Christine about a mandatory penalty associated with her charge of trafficking in marijuana. The State objected, asserting that the question violated a pretrial order admonishing the parties to refrain from mentioning potential penalties. The district court sustained the objection.

The jury found Maynard guilty of all charges. Consequently, the district court imposed a unified sentence of ten years with two years determinate. Maynard timely appeals.

## II.

## ANALYSIS

### A.    Motion for Mistrial

Maynard claims that the district court erred by denying her motion for mistrial based upon one incident of prosecutorial misconduct that occurred during her trial. In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A "mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

2

*State v. Urquhart*, 105 Idaho 92, 95, 665 P. 2d 1102, 1105 (Ct. App. 1983). Therefore, even after a finding of prosecutorial misconduct, a conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Martinez*, 136 Idaho 521, 523, 37 P.3d 18, 20 (Ct. App. 2001); *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998). Where prosecutorial misconduct is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *Martinez*, 136 Idaho at 523, 37 P.3d at 20; *Pecor*, 132 Idaho at 368, 972 P.2d at 746.[1]

In this case, Maynard claims that the prosecutor committed misconduct when a police officer testified that Maynard was seen pushing a baby stroller.[2] The relevant testimony was as follows:

PROSECUTOR: Prior to the actual search and execution of the warrant, what, if anything, did you do?

WITNESS: There was a--one of our detectives was conducting surveillance while we were sort of getting ready. Then he observed a female that was at the house with a baby stroller.

PROSECUTOR: Let me stop you there. . . .

Following the officer's testimony, defense counsel moved the district court for a mistrial based on the officer's statement regarding the baby stroller. Defense counsel argued that the

---

[1] Maynard asserts that "[i]n cases where juries have been exposed to extraneous information or other improper influences. . . . the proper standard is whether prejudice reasonably could have occurred, rather than whether prejudice actually has occurred." Maynard relies upon *Roll v. City of Middleton*, 115 Idaho 833, 837, 771 P.2d 54, 58 (Ct. App. 1989) to establish this standard. However, *Roll* is a civil case regarding a claim of juror misconduct that led to a motion for a new trial pursuant to Idaho Rule of Civil Procedure 59(a). Here, we have a criminal case regarding a claim of prosecutorial misconduct and a motion for a mistrial pursuant to I.C.R. 29.1. Therefore, Maynard's proposed standard is misplaced.

[2] Maynard points to *State v. Ellington*, 151 Idaho 53, 253 P.3d 727 (2011) to assert that when a police officer is testifying on behalf of the State, any response the officer makes is attributable to the State for purposes of a claim of prosecutorial misconduct. Maynard then argues that the officer's statement equated to misconduct because it was "in contravention of the State's express agreement not to present this evidence." Further, Maynard claims that the statement was irrelevant and was not part of the *res gestae* of the charged offense.

3

statement constituted misconduct because it was in contravention of the district court's granting of a motion in limine. The district court denied the motion, finding that:

> [T]he statement is, essentially, a statement of fact. The officer is testifying how the defendant was when they stopped--when he stopped her. . . . Just looking at it on its face, I think, under a Rule 29 standard, it isn't so prejudicial that it deprives the defendant of a fair trial.[3]

Nonetheless, the district court offered to provide the jury with a curative instruction to disregard the statement, but defense counsel refused.[4]

Now on appeal, Maynard alleges that the misconduct "could have reasonably resulted in prejudice in this case" because the jurors could "naturally conclude that [Maynard] had exposed a small child to an environment where drugs were being grown, and this would likely incite the passions and prejudice of the jurors." Maynard argues that the jury could have based its decision on factors outside of the evidence, and therefore the district court erred by denying her motion for a mistrial.

The State claims that assuming, arguendo, the testimony regarding the baby stroller was error, any error was harmless. We agree. In reviewing the record, we determine that the jury verdict would have been the same if the challenged statement had been excluded. Evidence was presented to the jury showing that Maynard knew a man named Freddie who allegedly ran a marijuana grow operation. At one point, Maynard assisted Freddie by taking notes in a "grow log." Around this time, Maynard also talked with her mother about wanting to learn how to

---

[3] The district court further found that the testimony was not in violation of the motion in limine order:

> First of all, I went back and looked at my notes. And my notes were that-- the motion in limine went to two aspects. One was the mention of the baby stroller by the officer when they initiated the stop and, also, the photographs that were possibly--would possibly be introduced that had photos of child toys and the like. . . . Counsel had said that, as far as in opening--counsel for the State had indicated, as far as the opening statement, with respect to mentioning the stop, he would not mention the baby stroller. That's as far--that's as far as we got on that. I didn't order that it not be brought up by any witness.

However, the State does not present argument that the statement did not constitute error, but instead argues that even if the statement was inadmissible, it does not warrant a mistrial.

[4] The State points to *State v. Grantham*, 146 Idaho 490, 198 P.3d 128 (Ct. App. 2008), to demonstrate that the jury is presumed to follow an instruction to disregard inadmissible evidence. Therefore, the State claims that Maynard's refusal to accept a curative instruction should prevent her from bolstering her claim of prejudice on appeal.

grow marijuana so they could move to California and grow their own medicinal marijuana. Maynard then obtained books describing how to grow marijuana. Eventually, Freddie asked Maynard if he could move his grow operation into her house. She agreed, and Freddie brought marijuana plants, equipment, and supplies to her house. Allegedly, it was Freddie who set up the grow operation inside two of the bedrooms in Maynard's house. To do so, he cut holes in the walls, hung fans and lights from the ceiling, placed plaster tin foil on the walls, and accessed the water cycle from the washer and dryer to water the plants. While the operation was ongoing, Maynard entered the grow rooms at least "a couple times." In return for allowing the grow operation into her house, Maynard was promised that her overdue rent and bills, which totaled approximately $4,600, would be paid. Maynard was also promised that she would receive a portion of the marijuana plants for her own use.

Evidence also showed that while the grow operation was running, police officers obtained a search warrant and searched Maynard's residence. The search revealed that the two grow rooms contained forty-one actively growing marijuana plants. In addition to the actively growing plants, the rooms also had pots filled with soil and plant stalks. Dried plants were also found on drying racks. The rooms also contained plant growing equipment and supplies, such as lights with reflective hoods, fan units, a ventilation system, a watering system, timers, $CO_2$ sensors, chemicals, fertilizers, and silver reflective panels on the walls. Officers also found the "grow log" with Maynard's handwritten notes. In the bedroom where Maynard slept, officers found two vials of methamphetamine, marijuana, the books on growing marijuana, drug paraphernalia, including baggies, rolling papers, a small rolling device, a "bong," a shake box, and multiple scales.

Evidence additionally showed that Maynard spoke with a police officer about the grow operation. During the interview, Maynard admitted that it was her idea to allow the grow operation into her house. She also admitted that a portion of the marijuana plants were hers. She further admitted that the vials in her bedroom contained methamphetamine. While in jail, Maynard made two telephone calls to an unidentified male. During the calls, Maynard said she "was just trying to . . . make some money," and that she was supposed to get "a huge amount of money" once the operation was "done."

Based on the foregoing unobjectionable evidence, we determine, beyond a reasonable doubt, that there is no reasonable probability that the officer's isolated statement regarding a

baby stroller contributed to Maynard's guilty conviction.  Therefore, we hold the error, if any, to be harmless.

**B.      Cross-examination**

Prior to trial, the State asked the district court to preclude evidence of potential criminal penalties as they were not relevant.  Defense counsel signaled agreement by stating, "I'm aware of the rules, Judge."  Accordingly, the district court precluded the evidence.  Nonetheless, during trial, defense counsel questioned Christine regarding the potential penalties she was facing.  After an objection from the State, defense counsel argued that the State opened the door for this line of questioning based on an inquiry into whether Christine received any consideration from the State in exchange for her testimony.  The district court found that the State had not opened the door, and therefore found that the evidence concerning penalties was precluded pursuant to the court's order.

Maynard alleges that the district court erred by not allowing her the opportunity to cross-examine Christine regarding her potential criminal penalties.  Maynard asserts that the district court's ruling:  (1) violated the Idaho Rules of Evidence, and (2) violated her constitutional right to confront the witness against her.  The State claims that Maynard is precluded from challenging the district court's ruling by the invited error doctrine.  Further, the State claims that if any error exists, such error would be harmless.

**1.      Rules of evidence**

Maynard claims that impeachment evidence concerning Christine's potential mandatory minimum sentence should have been admissible pursuant to the Idaho Rules of Evidence because the evidence was relevant to show Christine's bias.  Further, Maynard asserts that the district court erred by failing to conduct a balancing test pursuant to I.R.E. 403.  We review questions of relevancy de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).  "[T]he Rules of Evidence generally govern the admission of *all evidence* in the courts of this State." *State v. Meister*, 148 Idaho 236, 240, 220 P.3d 1055, 1059 (2009) (emphasis in original).  "All relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state."  I.R.E. 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  I.R.E. 401.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed

6

by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403.

We conclude that evidence of Christine's potential criminal penalties was not relevant. The existence of a mandatory minimum penalty does not make it more or less probable that Christine provided testimony favorable to the State. Christine testified that she was a co-defendant with Maynard and was facing similar charges. She further testified that she received no consideration in exchange for her testimony. Although it is possible that Christine's testimony could have led to a reduction of her charges, nothing in the record suggests any basis to support the possibility. The record is clear that there was no agreement between the State and Christine regarding any reduction in her charges or penalties as a result of her testimony. Therefore, the jury's knowledge of a mandatory minimum penalty for a specific charge would not allow the jury to infer that Christine was biased or motivated to testify against Maynard in an attempt to reduce her charges.[5] No such reduction was imminent or agreed upon. As a result, the district court did not err when it precluded evidence of Christine's potential penalty. Since evidence of Christine's potential penalty was irrelevant, it was not necessary for the district court to conduct a balancing test pursuant to I.R.E. 403.

### 2. Confrontation Clause

The right of an accused to confront adverse witnesses is safeguarded by the Sixth Amendment. Its "main and essential purpose" is to secure the opportunity of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). This includes the right to expose a prosecution witness's possible bias and motive for testifying so the jury can make an informed judgment as to the weight to be given the witness's testimony. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974); *State v. Gomez*, 137 Idaho 671, 674-75, 52 P.3d 315, 318-19 (2002); *State v. Harshbarger*, 139 Idaho 287, 293, 77 P.3d 976, 982 (Ct. App. 2003); *State v. Green*, 136 Idaho 553, 556-57, 38 P.3d 132, 135-36 (Ct. App. 2001). That is not to say, however, that a defendant is entitled to conduct a cross-examination that "is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Rather, trial judges have wide latitude to "impose reasonable limits on such cross-examination based on

---

[5]     Indeed, it is difficult to ascertain a potential bias as Christine's testimony did not differ significantly from the admissions and testimony of Maynard.

concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. *See also State v. Pierce*, 107 Idaho 96, 104, 685 P.2d 837, 845 (Ct. App. 1984).

We conclude that the district court's preclusion of testimony regarding potential penalties did not violate Maynard's rights under the Confrontation Clause. The district court sustained the prosecutor's objection on general grounds of relevance. Not all preclusion of defense cross-examination amounts to a Confrontation Clause violation. At the time Christine testified, the jury was aware of Christine's role in the grow operation. The jury heard evidence that Christine knew about the grow operation, lived in the house, and allowed, with Maynard, the operation to occur. The jury also heard evidence concerning Christine's personal marijuana use. Additionally, the jury heard an audio recording of a police officer informing Maynard that Christine would be arrested and would be responsible for her own actions. At trial, Christine testified that she was facing criminal charges, including the same manufacturing and trafficking in marijuana charges Maynard faced. Further, she testified that she was not promised any consideration in exchange for her testimony, but that she was hoping to receive a better deal. She also testified that she had met with the prosecutor on three occasions, each time with her attorney present. Based on this information, the jury was able to adequately assess Christine's credibility without knowing that she faced a mandatory minimum sentence. On the other hand, allowing evidence that a conviction for trafficking in marijuana--a crime Maynard was charged with--would result in a one-year mandatory minimum sentence could influence the jury's deliberative process. The information as to Christine's criminal penalties would convey to the jury penalties which Maynard might face, evidence defense counsel agreed should be precluded.

Maynard does not assert in this case that Christine's testimony was biased because Christine was attempting to shift blame away from her. In addition, Maynard was allowed to cross-examine Christine regarding the potential charges she was facing and the possible bias and motives associated with those charges. During cross-examination, the following testimony was presented:

| DEFENSE COUNSEL: | Now, [the prosecutor] went over the fact that you have been charged with some crimes here? |
| WITNESS: | Yes. |
| DEFENSE COUNSEL: | Do you remember that? |
| WITNESS: | Yes. |

| | |
|---|---|
| DEFENSE COUNSEL: | And you testified that you have not been promised any consideration, which means they didn't tell you for sure you were going to get a better deal, or any deal, because of your testifying here; right? |
| WITNESS: | Right. |
| DEFENSE COUNSEL: | But you are hoping to get a better deal, aren't you? Would it hurt your feelings if they gave you a better deal? |
| WITNESS: | Well, no. |
| DEFENSE COUNSEL: | Okay. And, right now, you are facing charges for manufacturing marijuana, trafficking in marijuana, and intent to deliver marijuana; correct? |
| WITNESS: | I thought the charges were manufacturing, trafficking, and felony possession. |
| DEFENSE COUNSEL: | Okay. If that's what you remember, that's fine. |

Thus, unlike *Davis*, where defense counsel was precluded from mentioning criminal charges, the district court in this case allowed defense counsel to ask Christine about her charges and whether or not she received any consideration for her testimony. As a result, the jury was able to assess Christine's credibility and determine the amount of weight to give her testimony. Also, unlike *Van Arsdall*, Christine did not have an agreement with the prosecution to have her charges dropped or reduced in exchange for her testimony. She was only hopeful for leniency, and the jury was privy to that fact. Further, Maynard was not precluded from inquiring into any potential agreements Christine may have had with the prosecution. Contrarily, the record demonstrates, as discussed above, that Maynard in fact did inquire into any potential agreements with the prosecution and discovered that no consideration was promised Christine. Based on the foregoing, we conclude that Maynard's right to confront the witnesses against her was not violated.

### 3. Invited error

Even if we were to determine that a constitutional violation or a violation of the Idaho Rules of Evidence occurred, Maynard is estopped from asserting such error pursuant to the doctrine of invited error. The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009). One may not complain of errors one has consented to or acquiesced in. *Id.* In short, invited errors are not reversible. *Id.*

In this case, prior to trial, defense counsel agreed that evidence regarding potential penalties was precluded based on relevancy. Following the State's objection, defense counsel

argued, however, that the prosecution had opened the door: "I agree with [the prosecutor] that, if they had not mentioned that, we could not go into this; but now we clearly can. . . . They opened the door, Judge." When the district court reiterated the prior order precluding the evidence, defense counsel once again agreed with the original preclusion, "And I agree, Judge, and we would have abided by that order until the State opened the door. When they opened the door, we can go into it." Thus, Maynard continued to agree that the subject of penalties was generally irrelevant except only as to potential bias based upon the prosecution's line of questioning.

Maynard contends that the State opened the door to allow Maynard to go into the penalties, because the State asked Christine about any consideration she hoped to receive as a result of her testimony. Maynard argues that the State's exploration into Christine's motive allowed her to question Christine regarding her potential penalties. We disagree. As discussed above, evidence of a mandatory minimum sentence does not show motive or bias because there is no indication that Christine's testimony allowed her to avoid such a sentence. Further, defense counsel was able to inquire into possible motive or bias by discussing Christine's charges and inquiring into whether or not she made a deal to have those charges reduced. Since Maynard agreed that evidence of penalties was not relevant and failed to demonstrate that the State opened the door to such evidence, Maynard invited any error. Therefore, the district court did not err in precluding evidence of Christine's potential criminal penalties.[6]

### 4. Harmless error

Even if we were to determine that the district court erred by precluding evidence of Christine's potential penalties, such error would be harmless in light of the overwhelming evidence against Maynard. As discussed above, the record demonstrates, beyond a reasonable doubt, that the jury would have reached the same conclusion even with the knowledge of Christine's potential penalties. Therefore, we conclude that the error, if any, was harmless.

---

[6] Maynard further claims that the district court's order precluding evidence of potential penalties only concerns Maynard's potential penalties. Therefore, Maynard argues that evidence of Christine's potential penalties should be allowed. We disagree. Maynard and Christine, as co-defendants, were facing similar charges. Maynard specifically inquired into the mandatory minimum penalty associated with the crime of trafficking in marijuana--a crime Maynard was also charged with. Allowing this evidence in the presence of the jury would make the jury aware of the potential penalties Maynard would be subject to.

## C.    Cumulative Error

The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* Maynard has failed to show that two or more errors occurred in her trial, and therefore the doctrine is inapplicable in this case. Even if errors in the trial had been shown, they would not amount to a denial of due process that would require reversal. The claimed errors, taken individually or cumulatively, were harmless.

## III.

## CONCLUSION

Maynard has failed to demonstrate reversible error in the district court's denial of her motion for mistrial or in precluding cross-examination relative to criminal penalties. Accordingly, the district court's judgment of conviction is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**