38 P.3d 132

STATE of Idaho, Plaintiff–Respondent,

v.

Troy Dale GREEN, Defendant–Appellant.

No. 26283.

Court of Appeals of Idaho.

Dec. 13, 2001.

tion provided by McCallum yielded the discovery of a methamphetamine lab and the arrest of four people. In consideration for the information, the State dismissed McCallum's DUI charge. In May 1999, Detective Markle had a conversation with McCallum about Troy Green. The detective asked McCallum to find out whether Green was involved in narcotics violations. In early June, McCallum told Markle that he believed that Green was manufacturing methamphetamine in a shed near McCallum's residence. In response to that information, the police went to McCallum's home in the early morning hours of June 4 and were directed to the shed by McCallum. In the shed they found Green and his girlfriend, Jennifer Baune, together with evidence of ongoing methamphetamine production. Green was arrested and charged with manufacturing methamphetamine, Idaho Code § 37–2732(a).

Green pleaded not guilty, and the case proceeded to a jury trial at which McCallum and Markle testified to the foregoing facts. In addition, the State introduced into evidence a document purporting to be a rental agreement between McCallum and a "Tom Anderson" by which the shed where the methamphetamine lab was found was leased from McCallum to "Anderson." McCallum testified that "Tom Anderson" was an alias used by Green and that Green was the renter of the shed under the rental agreement.

Before trial, the State moved *in limine* to preclude the defense from referring to a pending felony charge against McCallum. Ruling on this motion, the district court ordered "that there not be any reference . . . to any pending charges or to prior felony convictions without prior order of the court addressing that." During the trial, the prosecutor asked Detective Markle whether McCallum had received any consideration for his cooperation with the police in the present case other than the dismissal of the misdemeanor DUI charge, and Markle replied, "No." The prosecutor also asked if there was any sort of arrangement under which McCallum would get "more money or more benefit" for the cases on which he assisted the police. Again, the detective responded in the negative. On cross-examination of Detective

Molly J. Huskey, Interim State Appellate Public Defender; Richard J. Hansen, Deputy Appellate Public Defender, Boise, for appellant. Richard J. Hansen argued.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger II, Deputy Attorney General, Boise, for respondent. T. Paul Krueger II argued.

LANSING, Judge.

Troy Dale Green appeals from his conviction for manufacturing a controlled substance, methamphetamine. He argues that his cross-examination of a State's witness was improperly limited. He also challenges the sentence imposed and the denial of his motion for reduction of the sentence.

## I.

### FACTS AND PROCEDURAL HISTORY

In December 1998, an individual named Mark McCallum became an informant for Detective Perry Markle of the Boise Police Department. At the time, McCallum was facing a misdemeanor driving under the influence charge, and he approached Markle about trading information that McCallum possessed about drug dealers in exchange for dismissal of the DUI charge. The informa-

Markle, the defense sought to elicit evidence that there were pending felony charges against McCallum in order to show that he had a motive to fabricate evidence against Green. The State objected, and the district court admonished defense counsel that the question violated the court's previous ruling against disclosing pending charges against McCallum without prior approval of the court. The defense was allowed to question Detective Markle further, outside the presence of the jury, about the pending felony charge. Markle testified that the felony charge was at its early stages and that there was no agreement for a resolution of that case as consideration for McCallum's testimony in the case against Green. Following that testimony, the district court stated that it would allow defense counsel to explore any sort of consideration that McCallum might receive in connection with his testimony in the present case, but that defense counsel could not refer to the pending felony case against McCallum. In compliance with the district court's order, defense counsel did not further question Markle about the pending felony charge and did not cross-examine McCallum about whether he expected or hoped for any favorable treatment in the felony case as the consequence of his cooperation in Green's prosecution.

The jury returned a guilty verdict, and the district court sentenced Green to a unified ten-year term of imprisonment with four years determinate. A subsequent motion for reduction of the sentence was denied by the district court.

On appeal, Green contends that he is entitled to a new trial because the district court improperly prevented him from presenting evidence of McCallum's pending felony charge to show that McCallum had a motive to fabricate testimony against Green. This error, he contends, violated his constitutional right to confront adverse witnesses. Green also argues that his sentence is excessive.

## II

### ANALYSIS

**A. Right to Confront Adverse Witnesses**

■ Green asserts that the district court's prohibition against impeaching McCallum with the pending felony charge to show bias violated Green's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

■ "The main and essential purpose" of the constitutional right of confrontation "is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). The right of confrontation includes the right to attack the credibility of adverse witnesses, *Davis,* 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353–354; *State v. Downing,* 128 Idaho 149, 153, 911 P.2d 145, 149 (Ct.App.1996), including the opportunity to show bias in favor of the prosecution. *United States v. Abel,* 469 U.S. 45, 50, 105 S.Ct. 465, 468, 83 L.Ed.2d 450, 456 (1984). The partiality of a witness is always relevant to his credibility and the weight of his testimony. *State v. Araiza,* 124 Idaho 82, 91, 856 P.2d 872, 881 (1993). *See also Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 482–483, 102 L.Ed.2d 513, 519 (1988).

Here, the district court allowed Green to elicit testimony from the State's witnesses about consideration that McCallum had already received or "expected" in return for his testimony. The court would not, however, allow Green to elicit evidence that McCallum had a pending felony charge that might motivate him to give testimony favorable to the State in the *hope* of receiving leniency even if there was no express agreement or promise of such consideration. This, we conclude, was error. In *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), the United States Supreme Court held that the trial court erred in preventing the defendant from engaging in cross-examination of a prosecution witness that would show that the witness was then in custody for a pending criminal charge. This evidence was admissible, the Court held, to show that the witness's testimony "was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecu-

tion.... [P]etitioner was entitled to show by cross-examination that [the witness's] testimony was affected by fear or favor growing out of his detention." *Id.* at 693, 51 S.Ct. at 220, 75 L.Ed. at 628.

Although the *Alford* decision appears to have been rendered as a resolution of an issue of merely evidentiary law, and not a constitutional question, subsequent decisions make it clear that it is a violation of the Confrontation Clause to preclude cross-examination that will show bias or motive to fabricate because the prosecuting authority is in a position of power over the witness. An example is *Davis*, where the defendant was prevented from impeaching a seventeen-year-old witness with his juvenile criminal record and probationary status to show that the witness's testimony was tainted by a fear that his probation could be revoked if his testimony was unacceptable to the state. The Supreme Court reversed the defendant's conviction because his right to confront witnesses had been violated. The Court explained:

> While counsel was permitted to ask [the witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness.... On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which "would be constitutional error of the first magnitude...."

*Davis* at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355 (emphasis in original) (citations omitted). *See also Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that it was a Confrontation Clause

violation to prohibit cross-examination about the dismissal of a drunkenness charge against a witness after he agreed to speak with the prosecutor about the murder with which the defendant was charged).

The *Davis* decision establishes not only that prevention of cross-examination about a prosecution witness's bias may be a Confrontation Clause violation, but also that the defense may not be required to simply accept an adverse witness's assertions about the scope of any agreement or consideration for his testimony. Instead, the defense is entitled to present facts from which a jury may reach its own conclusions. As the Idaho Supreme Court stated in *Araiza,* 124 Idaho at 91, 856 P.2d at 881, "*Davis* held that in order to give meaning to the right to confront witnesses, the defendant must be permitted to do more than merely ask whether a witness is biased, but must be allowed to show why the witness might be biased by presenting the facts necessary to allow the jurors to form inferences regarding the witness' impartiality." Accordingly, we hold that the restrictions placed on Green's cross-examination of McCallum and Detective Markle infringed Green's constitutional right of confrontation.

This conclusion requires that we further determine whether a new trial is necessary. A Confrontation Clause violation does not automatically require reversal; rather, the doctrine of harmless error applies. *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id.* The *Van Arsdall* Court enumerated factors to be considered in the harmless error analysis:

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material

points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*

Green maintains that the error in his case could not have been harmless because, had the jury known of McCallum's motive to provide testimony helpful to the prosecution, it might have concluded that Green was "set up" by McCallum. According to Green, if the jurors had known there was reason to discredit McCallum's testimony, they might have been unpersuaded that Green was the operator of the methamphetamine lab as distinguished from a mere bystander or dupe who was present in the shed for other reasons when the police arrived.

■ We find Green's argument unconvincing, for after reviewing the evidence indicating Green's connection to the methamphetamine lab, we are persuaded beyond a reasonable doubt that the jury would have found Green guilty even if the impeachment of McCallum had not been incorrectly limited. According to police testimony, the shed reeked with the odor of chemicals. When officers knocked on the door of the shed, Green opened the door, but immediately said he needed to put on some pants and then closed the door. This was peculiar because Green at that point was already wearing blue jeans. After Green closed the door on the pretext of needing to get dressed, the officers heard sounds of glassware banging, liquids being poured, and persons scurrying about inside. When police eventually entered the shed, they found a black bag within which was a wallet containing a note addressed to "Troy." The bag also contained men's clothing and paraphernalia associated with drug production and drug use, including glassware, tubing and scales. When Green was searched incident to his arrest, officers found that he was carrying $480 in cash. Green's girlfriend, who was with him at the shed, told Detective Markle that she knew that Green was a methamphetamine cook although she did not see him cooking that night. Given all of this evidence, and particularly the activity that officers could hear after Green closed the door to "put on some pants," we are confident that the jury

would have found Green guilty of manufacturing methamphetamine even if Green had been allowed to disclose McCallum's pending felony charge.

## B. Sentence

■ Green also asserts that his unified ten-year sentence with a four-year minimum term is unduly harsh and asks us to reduce it. When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine whether there has been an abuse of the sentencing court's discretion. *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). The defendant bears the burden to show that the sentence is excessive in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982). For purposes of appellate review, we consider the minimum period of confinement as the probable duration of incarceration. *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 500, 861 P.2d 67, 70 (1993). Where reasonable minds might differ as to the length of the sentence, we will not substitute our view for that of the district court. *Brown, supra; State v. Admyers,* 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992).

Green's history of criminal behavior includes felony convictions for possession of a controlled substance and aggravated battery. He had violated the probations that had been granted in both of those felony cases. The presentence investigation report indicates that Green was not a novice in the methamphetamine manufacturing field but considered himself to have a reputation as an effective methamphetamine cook who knew "all the recipes." Green also had demonstrated a lack of responsibility in his personal life, having accrued more than $34,000 in unpaid child support for his five children. Although

Green claimed to need and want assistance with vocational retraining, during his prior probation he failed to pursue the vocational rehabilitation assistance to which he was referred by his probation officer. Given this evidence of Green's character, and the seriousness of the crime for which he was convicted, we do not deem his sentence to be excessive.

Green's final contention on appeal is that the district court abused its discretion in denying his motion for reduction of his sentence pursuant to Idaho Criminal Rule 35. A motion to reduce a legal sentence imposed in a lawful manner is essentially a plea for leniency which may be granted in the discretion of the sentencing court. *State v. Arambula,* 97 Idaho 627, 630, 550 P.2d 130, 133 (1976); *State v. Lopez,* 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App. 1984). On appeal from a denial of a Rule 35 motion, we determine whether the trial court abused its discretion, applying the same criteria that are used in reviewing the reasonableness of the original sentence. *State v. Forde,* 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987). We have already found that the sentence was reasonable when imposed, and Green presented no new evidence in support of the motion. Therefore, Green has not shown that the denial of his Rule 35 motion was an abuse of the trial court's discretion.

### III.

### CONCLUSION

Although there was error in the limitations placed upon Green's cross-examination of prosecution witnesses, we conclude that the error was harmless and does not necessitate a new trial. Green has not shown that the sentence imposed for his offense is excessive. Therefore, the judgment of conviction and sentence are affirmed, as is the district court's decision denying Green's motion for reduction of the sentence.

Chief Judge SCHWARTZMAN and Judge PERRY concur.