**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35110**

| | |
|---|---|
| TERRENCE J. MATTHEWS, )<br>)<br>    Petitioner-Appellant, )<br>)<br>v. )<br>)<br>KIM JONES, Warden ICI-O, and )<br>COMMISSION OF PARDONS AND )<br>PAROLE, )<br>)<br>    Respondents. )<br>) | **2009 Opinion No. 26**<br><br>**Filed: April 9, 2009**<br><br>**Stephen W. Kenyon, Clerk** |

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County.  Hon. John H. Bradbury, District Judge; Hon. Randall W. Robinson, Magistrate.

District court's appellate decision affirming magistrate's summary judgment dismissing petition for habeas corpus, <u>affirmed</u>.

Terrence Matthews, Orofino, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark A. Kubinski, Deputy Attorney General, Boise, for respondents.

LANSING, Chief Judge

Terrence J. Matthews appeals from the district court's decision on intermediate appeal, affirming the magistrate's summary judgment that dismissed Matthews' petition for a writ of habeas corpus.  Matthews' petition sought to overturn the revocation of his parole by the Idaho Commission of Pardons and Parole ("Commission") for alleged due process violations in the Commission's proceedings.  We affirm.

**I.**

**FACTS AND PROCEDURE**

In 1991, Matthews was convicted of two counts of lewd conduct with a child under sixteen and two counts of sexual abuse of a child under sixteen.  He received four concurrent unified sentences of fifteen years, with five years determinate.  *See State v. Matthews*, 124 Idaho

1

806, 864 P.2d 644 (Ct. App. 1993). In 1996, Matthews was paroled, but his parole was revoked in February 2002. In May 2002, Matthews was again paroled. On July 29, 2005, he was arrested on an agent's warrant for again violating terms and conditions of his parole. A preliminary hearing on the alleged violations was conducted on August 16, 2005, after twice being continued at Matthews' request. On October 21, 2005, an evidentiary parole violation hearing was held before a hearing officer, after also being twice continued at Matthews' request. Matthews was represented by counsel and was allowed to cross-examine adverse witnesses at this hearing. On January 3, 2006, the hearing officer issued a written decision finding that Matthews had committed numerous violations, including numerous unauthorized contacts with minor children, frequenting places where minors congregate, using the Internet without permission, failing to inform an employer of his criminal convictions, leaving the state and the supervising district without permission, frequenting bars, failing to comply with sex offender treatment, changing residences without permission, and failing to submit monthly reports to his parole officer. On these findings, the hearing officer recommended that Matthews' parole be revoked. Matthews was given a copy of the hearing officer's decision on January 25, 2006.

The hearing officer's decision was forwarded to the Commission, and a final dispositional hearing was scheduled before the Commission for February 1, 2006 to determine whether Matthews' parole would be revoked. That hearing was continued at Matthews' request to March 15, 2006 to enable his counsel to be present. The March 15 hearing began, but could not be finished because Matthews became hysterical. On April 13, 2006, the dispositional hearing was completed. Matthews' counsel was present at both hearings. The minutes of the March and April hearings indicate that two witnesses testified adversely to Matthews, but imply that Matthews was not allowed to cross-examine them. In a written decision, the Commission adopted the factual findings of the hearing officer concerning the parole violations and elected to revoke Matthews' parole. The Commission's decision states that "the reasons of the Commission for revoking and denying parole are based solely on the findings of the hearing officer, not on testimony from any witnesses at this revocation hearing."

Matthews filed a verified petition for a writ of habeas corpus seeking to overturn the revocation of his parole. The petition alleged, among other things, that the Commission's hearing officer violated a governing statute when she did not issue her decision within twenty days after the October 21, 2005 hearing and that the Commission violated Matthews' right to due

2

process by disallowing cross-examination of the witnesses at the dispositional hearings. The respondents moved for summary judgment, and the magistrate granted the motion. The magistrate held that certain of Matthews' claims of error by the Commission and the hearing officer failed as a matter of law and that Matthews was not entitled to relief on other alleged errors. Matthews appealed to the district court, which affirmed the magistrate in all respects. Matthews now appeals to this Court.

## II.

## ANALYSIS

When this Court reviews a decision rendered by a district court acting in its appellate capacity, it considers the trial court's decision, and if that decision is free from error and if the district court affirmed that decision, we affirm the district court's decision as a matter of procedure. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *Nicholls v. Blaser*, 102 Idaho 559, 633 P.2d 1137 (1981).

In an appeal from a summary judgment, we apply the same standard of review utilized by the trial court when ruling on the motion. *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003); *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997); *Friel v. Boise City Housing Authority*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). Summary judgment may be entered only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho Rule of Civil Procedure 56(c). A disputed fact will not be deemed "material" for summary judgment purposes unless it relates to an issue disclosed by the pleadings. *Argyle v. Slemaker*, 107 Idaho 668, 669-70, 691 P.2d 1283, 1284-85 (Ct. App. 1984); *Bennett v. Bliss*, 103 Idaho 358, 360, 647 P.2d 814, 816 (Ct. App. 1982).

The writ of habeas corpus is a constitutionally mandated mechanism to effect the discharge of an individual from unlawful confinement. *See* IDAHO CONST. art. I, § 6; Idaho Code § 19-4201, *et seq.*; *Mahaffey v. State*, 87 Idaho 228, 231, 392 P.2d 279, 280 (1964); *Gawron v. Roberts*, 113 Idaho 330, 333, 743 P.2d 983, 986 (Ct. App. 1987). "The essence of habeas corpus is an attack upon the legality of a person's detention for the purpose of securing release where custody is illegal. . . . The writ is an avenue by which relief can be sought where detention of an individual is in violation of a fundamental right." *In re Application of Robison*, 107 Idaho 1055,

1057, 695 P.2d 440, 442 (Ct. App. 1985). It may be used to challenge the revocation of parole or the violation of a parolee's constitutional rights during the course of parole revocation proceedings. I.C. §§ 19-4205(2)(b), 19-4213.

Matthews' briefs on this appeal attempt to raise numerous issues for our resolution. Many of them we do not address either because they were not raised before the magistrate court or because they were not presented on the intermediate appeal to the district court. It is well established that an appellate court of this state will not consider issues that were not presented to the trial court, *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *State v. Jones*, 141 Idaho 673, 676, 115 P.3d 764, 767 (Ct. App. 2005); and where an intermediate appeal has occurred, only issues raised in that intermediate appeal may be brought forward to a higher appellate court. *Barmore v. Perrone*, 145 Idaho 340, 344, 179 P.3d 303, 307 (2008); *Stonecipher v. Stonecipher*, 131 Idaho 731, 737, 963 P.2d 1168, 1174 (1998); *Harris v. Carter*, 146 Idaho 22, 24, 189 P.3d 484, 486 (Ct. App. 2008); *State v. Bailey*, 117 Idaho 941, 943, 792 P.2d 966, 968 (Ct. App. 1990). Accordingly, we address only those issues now presented by Matthews that were properly preserved in the proceedings below.

## A. Evidentiary Hearing Before the Magistrate

Matthews first contends that the magistrate erred by not conducting an evidentiary hearing on the allegations of his petition. From Matthews' briefing on appeal, it is not entirely clear why he contends an evidentiary hearing was required, but he seems to argue that one was needed in order to relitigate, before the magistrate, the factual issues decided by the hearing officer and later adopted by the Commission. The magistrate, and the district court on intermediate appeal, held that Matthews was not entitled to an evidentiary hearing for this purpose.

The courts below were correct. Under the applicable statutes, the finder of fact in parole violation proceedings is the Commission, and a habeas court's role in reviewing those factual findings is limited to a determination whether substantial evidence was presented to support them. *Craig v. State*, 123 Idaho 121, 124-26, 844 P.2d 1371, 1374-76 (Ct. App. 1992). Therefore, Matthews was not entitled to an evidentiary hearing before the magistrate to re-litigate the facts of the alleged parole violations.

4

**B.     Violation of the Time Frames of I.C. § 20-229**

Matthews next contends that the hearing officer violated I.C. § 20-229B by not issuing her decision within twenty days after the October 21, 2005 hearing.

Before addressing this issue, we take a moment to describe the framework for parole revocation proceedings that is established by Idaho statute. Idaho Code § 20-229B[1] provides for two separate hearings. The first of these, which is referred to in the statute as a "factual parole revocation hearing," is to be conducted before a member of the Commission or a hearing officer. Its purpose is to determine whether the alleged parole violations have been proven by a preponderance of the evidence. If the commissioner or hearing officer conducting this hearing concludes that the violations have been proven, then a second hearing, referred to as a "dispositional hearing," must be conducted by the Commission to determine whether parole will be revoked.[2]

Matthews' first challenge to his parole revocation proceeding asserts a violation of the first sentence of I.C. § 20-229B, which states, "After a factual parole revocation hearing has been

---

[1]     Section 20-229B states:

> After a factual parole revocation hearing has been concluded, the member or members of the commission for pardons and parole or the designated hearing officer, having heard the matter, shall enter a decision within twenty (20) days. If the member or members or hearing officer, having heard the matter, should conclude that the allegations of violation of the conditions of parole have not been proven by a preponderance of the evidence, or those which have been proven by a preponderance of the evidence are not sufficient cause for the revocation of parole, then the parolee shall be reinstated on parole on the same or modified conditions of parole. If the member or members or hearing officer, having heard the matter, should conclude that the allegations of violation of the conditions of parole have been proven by a preponderance of the evidence and constitute sufficient cause for the revocation of parole, then a dispositional hearing shall be convened during a regular session of the commission to execute an order of parole revocation and determine the period of time the parole violator shall be returned to state custody.

[2]     Section 20-229B and other parole revocation statutes could be read to vest final decision-making authority concerning revocation of parole in a single member of the Commission or in a hearing officer. However, our Supreme Court has recently held that the parole revocation statutes, read *in pari materia*, vest authority to decide whether to revoke or continue parole solely in the full Commission. *See Mattoon v. Blades*, 145 Idaho 634, 181 P.3d 1242 (2008).

concluded, the [commissioner or hearing officer who heard the matter] shall enter a decision within twenty (20) days." He contends that the remedy for this violation should be his release from incarceration on time served.

The record here does indicate a violation of the statute. The factual parole violation hearing was held on October 21, 2005, but the hearing officer did not issue her written decision until January 3, 2006. There were many postponements in the hearing process that were attributable to Matthews, but the hearing officer's delay in issuing her decision was not among them.

The respondents' summary judgment motion did not contend there was no violation of section 20-229B, but argued instead that because Matthews failed to timely petition for habeas relief, he is without a remedy. We are constrained to agree. In *Loomis v. Killeen*, 135 Idaho 607, 21 P.3d 929 (Ct. App. 2001), we held that the petitioner's due process right to a timely preliminary hearing on allegations of parole violations was infringed when the hearing was not conducted until thirty-eight days after his arrest. We further held, however, that absent prejudice to the petitioner in his ability to present a defense caused by the delay, dismissal of parole violation charges and reinstatement of parole is not an available remedy for untimely parole revocation proceedings. *Id.* at 612, 21 P.3d at 934. Instead, the remedy is release from custody until the hearing is held or the matter is decided. *Id.* at 612-13, 21 P.3d at 934-35. The reasoning of *Loomis* applies here. Matthews has not alleged that the tardiness of the hearing officer's decision impaired his ability to present a defense and he did not seek relief in the courts until he filed this habeas petition in October of 2006, well after his parole was revoked. Under these circumstances, there is no presently available remedy for the alleged statutory violation.

**C.    Due Process Right to Cross-examine Adverse Witnesses**

Lastly, Matthews alleges that he was deprived of due process at the April 13, 2006 dispositional hearing.

The procedural safeguards that must be provided in parole revocation proceedings in order to comport with the constitutional right to due process were outlined by the United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972). The Supreme Court there held that because a parolee has a liberty interest at stake, the right to due process applies in parole revocation proceedings. *Id.* at 481-82. In determining what process was due, the Supreme Court mandated two important stages in the process for an individual who has been

6

arrested for an alleged parole violation. *Id.* at 485. The first stage is a minimal inquiry, "in the nature of a 'preliminary hearing,'" that should be conducted at or reasonably near the place of the alleged violation and as promptly as reasonably convenient to determine whether there is probable cause to believe there has been a parole violation. *Id.* This determination must be made by a neutral official who is uninvolved in the parolee's case, i.e., someone other than the parole officer who reported the alleged violations or recommended revocation. *Id.* at 485-86. The parolee has a right to notice of this hearing, to notice of the nature of the violations that are alleged, and to appear and present evidence to the hearing official. *Id.* at 486-87. Absent a finding by the hearing official that an informant would be subjected to risk of harm should his identity be disclosed, on the parolee's request the source of adverse information upon which the violation report is based must be made available for confrontation and cross-examination in the parolee's presence. *Id.* The hearing conducted in Matthews' case on August 16, 2005, was this sort of preliminary hearing, and he asserts no error in those proceedings.

The second stage in the process established by *Morrissey* is what the Court called the "revocation hearing." *Id.* at 487. The Supreme Court described the required procedural safeguards as follows:

> There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable.
>
> We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole

revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

*Id.* at 487-89 (footnote omitted). Matthews contends that these standards were violated in his April 13 dispositional hearing because he was forbidden to cross-examine adverse witnesses who testified.

Again, the respondents' summary judgment motion does not dispute Matthews' factual allegation that cross-examination was denied. They argue that the *Morrissey* requirement of the opportunity to cross-examine adverse witnesses does not apply at the dispositional hearing, where the only issue is whether the parole violations, which were proven at an earlier hearing, warrant revocation of the offender's parole. The respondents point out that *Morrissey* specifically allows states to develop their own procedures for parole revocation. *See Morrissey*, 408 U.S. at 488. They posit that Idaho has, by I.C. § 20-229B, permissibly split *Morrissey's* contemplated revocation hearing into two separate proceedings--(1) a factual parole violation hearing, usually conducted before a hearing officer or a member of the Commission and; (2) a final dispositional hearing before the Commission--and that the *Morrissey* mandate of the right to cross-examine witnesses "exists only during the preliminary or fact-finding stage of the proceedings." Although we agree that this bifurcation of the proceedings is permissible, *see Smith v. Idaho Dep't of Correction*, 128 Idaho 768, 772, 918 P.2d 1213, 1217 (1996), we cannot agree that the right of cross-examination is limited to the first of these hearings. *Morrissey* makes no such distinction. It contemplates a unified fact-finding/revocation proceeding at which all the identified rights apply, including the right to cross-examine *all* witnesses called by the State.

The respondents also argue that because the Idaho Supreme Court has held that certain administrative rules of the Commission, former IDAPA 50.01.01.650.08 (now IDAPA 50.01.01.400.06), comply with the requirements of *Morrissey*, *see Mattoon v. Blades*, 145 Idaho 634, 637, 181 P.3d 1242, 1245 (2008); *Smith*, 128 Idaho at 772, 918 P.2d at 1217,[3] a different subsection of the current rules, IDAPA 50.01.01.400.03(c), necessarily also must comply with

---

[3] The current version of this rule subsection is markedly different from the former version.

the *Morrissey* standards. According to the respondents, this current subsection permits the Commission to disallow cross-examination at dispositional hearings.

In examining this argument, we begin by noting that the respondents misrepresent the content of the current rule, which states:

> 03. Due Process. Every parolee arrested on a commission warrant for alleged violation(s) of parole is entitled to pertinent due process. (3-23-98)
>> a. The alleged parole violator is entitled to reasonable notice of the date, time and location of any and all hearings involved in the revocation process. (3-23-98)
>> b. The alleged parole violator has the right to appear at a hearing and address the allegations. (3-23-98)
>> *c. The alleged parole violator may confront and cross-examine person(s) who have given adverse information on which the charges have been based.* (3-23-98)

(emphasis added). Contrary to the respondents' assertions, this subsection does not exempt the dispositional hearing from the right of cross-examination. Even if it did, such an attempted exemption would violate the due process guarantees dictated by *Morrissey*, regardless of whether it was authorized in Idaho statutes or administrative rules. Because the United States Constitution always trumps state law, compliance with a statute or rule does not shield the Commission when a right to due process is infringed. *Loomis*, 135 Idaho at 611, 21 P.3d at 933; *Gawron*, 113 Idaho at 336, 743 P.2d at 989.

Here, Matthews has at least raised a factual issue as to whether the Commission prohibited Matthews from cross-examining witnesses at the dispositional hearing. We conclude that this factual issue did not preclude summary judgment dismissing Matthews' claim however, because even if the alleged due process violation occurred, it was harmless error in this case. Even constitutional errors, including deprivation of the right of cross-examination, may be harmless, not necessitating a remedy on appeal. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *State v. Green*, 136 Idaho 553, 557, 38 P.3d 132, 136 (Ct. App. 2001). Such is the case here. Both of the witnesses who testified at the dispositional hearing had previously testified at the factual parole violation hearing before the hearing officer, at which time Matthews was afforded the opportunity to cross-examine them. The minutes of the two hearings do not reveal any marked difference in their testimony. More importantly, the minutes of the dispositional hearing also state that "the reasons of the Commission for revoking and denying parole are based solely on the findings of the hearing officer, not on testimony of any witnesses at this revocation

9

hearing." Thus, the record establishes that Matthews was not prejudiced by the disallowance of cross-examination at the dispositional hearing. Even assuming that the Commission prohibited cross-examination (an action that we would not condone), because the Commission has stated that it did not rely upon the testimony that was sheltered from cross-examination, Matthews has not shown that the error infected the parole revocation decision, and hence has not shown that his current imprisonment is unlawful. Accordingly, he is not entitled to habeas relief.

## III.

## CONCLUSION

The district court's appellate decision affirming the magistrate's order denying Matthews' petition for a writ of habeas corpus is affirmed.

Judge PERRY and Judge GUTIERREZ **CONCUR.**