IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38278

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 422 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 29, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TIA JO SATCHER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

Judgment of conviction for grand theft, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

————————————————————————

LANSING, Judge

Tia Jo Satcher appeals from a judgment of conviction for grand theft of lost property, Idaho Code §§ 18-2403(2)(c), 18-2407(1)(b). Satcher asserts that the district court erroneously allowed improper testimony, and that the evidence presented at trial was insufficient to support a guilty verdict.

## I.

## BACKGROUND

On December 24, 2008, shortly after 11:30 a.m., Danelle Ostolasa-Mendiola (hereinafter "Owner") left her purse in a shopping cart, where Satcher subsequently discovered it. At 12:34 p.m. Owner's credit card was used to purchase gas at a nearby gas station without Owner's permission. A surveillance video from the gas station showed Satcher sitting in the front passenger seat of a van at 12:33 p.m. while the male driver of the vehicle pumped the gas. At some point between 12:30 and 2 p.m., Satcher was observed at another store by Curt Crum, a

1

civilian supervisor in the Crime Prevention Unit of the Boise Police Department. Crum's attention was drawn to Satcher for reasons unrelated to Satcher's involvement with Owner's purse.[1] Shortly before 2 p.m., Crum followed Satcher as she left the store parking lot in a van, and he called for assistance from the Boise Police. Crum testified that he noticed Satcher looking back at him and the two marked police vehicles that soon joined him. Crum and the other officers followed Satcher into the same store parking lot where Owner lost her purse. At approximately the same time, Satcher used a cell phone to telephone Owner and told Owner that Satcher had found the purse but would have to call back because she was being stopped by police. While talking to an officer, who at this point knew nothing about the purse, Satcher asserted that she had previously found a purse in the parking lot and was attempting to return it. The police contacted Owner, and eventually took Satcher into custody after learning that Owner's credit card had been used without permission while in Satcher's possession.

At trial, Satcher attempted to demonstrate that she had taken reasonable steps to return the purse. Her testimony can be summarized as follows. Satcher found the purse in the parking lot between 11:30 a.m. and 12:15 p.m. She looked for the owner in the parking lot, but did not see anybody nearby, so she took the purse into the store and notified a store employee. The employee asked Satcher to leave the purse on a counter, but Satcher declined the employee's request because the counter was unattended. Satcher decided to attempt to contact Owner directly. She located Owner's phone number on a check in the purse and called twice, at some point before leaving the premises. No one answered on Satcher's first attempt, but the line was busy on her second attempt, so she "knew somebody must be home" and decided to try again later. At approximately 12:30, while Satcher was a passenger in a van driven by her friend, Robert Miner, Miner drove into a gas station and purchased gas, which surprised Satcher because Miner had already purchased gas earlier that morning. Satcher testified that she did not know that Miner was using Owner's credit card to pay for the gas. Between 2 p.m. and 2:30 p.m., Satcher made her third attempt to telephone Owner. Owner answered the call, and Satcher was making arrangements to return the purse when she became aware that police were pulling the vehicle over.

---

[1]     Crum apparently provides merchant security and loss prevention services, and was following Satcher because he believed she may have been involved in an unrelated incident of attempted theft, but this information was not disclosed to the jury.

The jury found Satcher guilty and she appeals, alleging error in the admission of evidence at trial and contending that the trial evidence was insufficient to support the jury's verdict.

## II.

## ANALYSIS

### A.      Evidence of a Joint Restitution Order

Prior to Satcher's testimony at trial the State sought permission to impeach her, if she testified, with the fact that she had two prior felony convictions--a 2000 conviction for forgery and a 2009 conviction for grand theft. The district court held that the State could impeach by reference to both felony convictions pursuant to Idaho Rule of Evidence 609, but could not inform the jury of the nature of the second felony because the nature of that conviction would be excessively prejudicial to Satcher. The court also held that if Satcher, in her testimony, denied having been aware that Miner used Owner's credit card to purchase gas, the State could present evidence that Satcher and Miner were joint obligors on a restitution order in the prior grand theft case. The court concluded that this evidence would be relevant to counter Satcher's contention that Miner had used the card without her knowledge or participation.

In light of these rulings, Satcher disclosed her prior convictions during direct examination and also disclosed her joint restitution obligation with Miner as follows:

| | |
|---|---|
| Defense Counsel: | The matter for which you're on probation in Canyon County, in 2009, is there an order of restitution in that case? |
| Defendant: | Yes, there is. |
| Defense Counsel: | And does that or--order of restitution include a person named Robert Miner? |
| Defendant: | Yes, sir. |

The State did not ask any additional questions regarding the restitution order during cross-examination.

On appeal, Satcher does not challenge the admission of the evidence of her prior felony convictions, but she contends the court erred in allowing evidence of the restitution order. She asserts that this evidence was not proper impeachment, was irrelevant, and constituted impermissible propensity evidence barred by I.R.E. 404(b). She also asserts that if the evidence had any probative value, that value was substantially outweighed by the danger of unfair prejudice and therefore should have been excluded under I.R.E. 403.

On appeal, the State does not contest Satcher's contention that admission of evidence of the restitution order was error, and therefore for purposes of this appeal we will assume error. The only question remaining is whether the error was harmless or necessitates a new trial, which we shall address after considering Satcher's second claim of evidentiary error.

**B.      Opinion of Satcher's Truthfulness**

Satcher alleges that the district court erred in allowing a detective to testify, over defense objections, that in his opinion Satcher's denial of guilt during a police interrogation was untruthful. During direct examination of the detective, the prosecutor was allowed to elicit testimony about the detective's training on how to read body language and other physical signs to determine whether a person under interrogation is lying. After the officer described his training and experience and described Satcher's demeanor during the interview, the prosecutor asked whether the officer believed Satcher was being truthful during the interrogation. Defense counsel objected that the question improperly invaded the province of the jury. The trial court overruled the objection, and the officer testified that he believed Satcher had not been truthful.

Satcher asserts error in the allowance of this testimony, and the State again concedes error. We agree. It is well established that the opinion of one witness about the truthfulness of another witness's statement, whether made during or prior to trial, is not admissible evidence. *State v. Perry*, 150 Idaho 209, 229, 245 P.3d 961, 981 (2010); *State v. Christiansen*, 144 Idaho 463, 468, 163 P.3d 1175, 1180 (2007); *State v. Raudebaugh*, 124 Idaho 758, 768, 864 P.2d 596, 606 (1993). In *Perry*, the Idaho Supreme Court explained that "lay witnesses are not permitted to testify as to matters of credibility," and "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by [I.R.E. 702]." *Perry*, 150 Idaho at 229, 245 P.3d at 981 (quoting *State v. Perry*, 139 Idaho 520, 525, 81 P.3d 1230, 1235 (2003)). Thus, the district court erred in allowing the testimony.[2]

---

[2]     Satcher also asserts that the prosecutor's improper questions regarding the officer's opinion of Satcher's truthfulness constituted prosecutorial misconduct and that we should reverse because the State has not made any arguments that the alleged prosecutorial misconduct was harmless, citing *State v. Ruiz*, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010). Assuming, *arguendo*, that the prosecutor committed misconduct by inquiring into the officer's opinion, or even by repeating the question after the district court overruled Satcher's objection, there is no reason to engage in a separate analysis of prosecutorial misconduct in addition to analysis of the

## C. Harmless Error

Two errors in the admission of evidence at Satcher's trial have been identified. Under the doctrine of cumulative error, a series of errors, although harmless individually, may in the aggregate show the absence of a fair trial. *Perry*, 150 Idaho at 230, 245 P.3d at 982. Therefore, we must determine whether, in the aggregate, the incorrect admission of the detective's opinion that Satcher was untruthful and evidence of the prior restitution order on which Satcher was jointly responsible with Miner was harmless or would necessitate a new trial. Where an objected-to error occurred, the State bears the burden of demonstrating that the error was harmless beyond a reasonable doubt. *Id.* at 222, 245 P.3d at 974. Error will be deemed harmless if the reviewing court can say, beyond a reasonable doubt, that the error did not contribute to the verdict. *Id.* at 219-21, 245 P.3d at 971-73. Whether trial errors could have affected the outcome of a trial generally depends, in part, upon the strength of the properly admitted evidence of guilt. *See State v. Hooper*, 145 Idaho 139, 146, 176 P.3d 911, 918 (2007); *State v. Gerardo*, 147 Idaho 22, 27, 205 P.3d 671, 676 (Ct. App. 2009); *State v. Green*, 136 Idaho 553, 557-58, 38 P.3d 132, 136-37 (Ct. App. 2001).

First, testimony that there had been a restitution order in the case for which Satcher was on probation and that the restitution order "include[d] a person named Robert Miner" was so vague that it likely did nothing more than puzzle the jury. The testimony did not make clear that Satcher and Miner were joint obligors on the restitution order or accomplices in the crime.

The detective's opinion that Satcher was untruthful is more problematic, and the error is exacerbated by the fact that the opinion came after extensive testimony attempting to qualify the detective as an expert in recognizing signs of dissembling. Nevertheless, based on the strength of the State's case, and the inconsistencies in and implausibility of Satcher's defense, we are convinced beyond a reasonable doubt that the jury would have reached the same result even without evidence of the officer's opinion of Satcher's untruthfulness.

---

erroneous evidentiary ruling that allowed the questioning. Regardless of whether we characterize the mistake as evidentiary error, prosecutorial misconduct, or both, the effect on the trial was the same. Thus, we reject Satcher's argument that the State was required to specifically argue harmlessness in the context of both the erroneous evidentiary ruling *and* the alleged prosecutorial misconduct.

Satcher acknowledged finding Owner's purse in a store parking lot at some point between 11:30 a.m. and 12:30 p.m., that a credit card from the purse was used to purchase gas shortly after 12:30 p.m., while Satcher was in the vehicle, and that Satcher did not actually contact Owner until she was being followed by two marked police cars, sometime after 2 p.m. The details of Satcher's various accounts were inconsistent and incomplete. For example, Satcher told Owner that she found the purse beside a dumpster, but she testified at trial that she located the purse in a cart approximately seventy-five yards from the garbage bins. Satcher told a detective that she located the purse at approximately 2 p.m., but she testified at trial that she found it hours earlier. Satcher testified that her first call to Owner went unanswered, but Owner testified that she had an answering machine on which there was no message from Satcher. Satcher was unable to remember numerous details when pressed on cross-examination, including specifically where or when she made her first two attempts to telephone Owner. Satcher testified that she knew somebody was home at Owner's house at approximately 12:15 p.m. when she received a busy signal, but she did not explain why she did not make any other attempts to call Owner until Satcher was being followed by the police approximately two hours later. Most importantly, Satcher implausibly claimed not to have noticed when Miner opened Owner's purse while it was sitting in the vehicle between him and Satcher, accessed the wallet inside, removed the credit card inside the wallet, used the credit card to purchase gas, then replaced it in Owner's wallet, and replaced the wallet into the purse. Satcher's only explanation for her alleged failure to see any of this was that there was a dog in the vehicle between her and the purse.

After considering the trial evidence as a whole, we are convinced beyond a reasonable doubt that the cumulative effect of the prosecutor's elicitation of testimony regarding Satcher's truthfulness, and the admission of testimony regarding the joint restitution order, did not contribute to the guilty verdict or deprive Satcher of a fair trial. The errors were harmless, whether viewed independently or cumulatively.

D. **Sufficiency of the Evidence**

Lastly, Satcher argues that the trial evidence was insufficient to support the jury's finding of guilt. Appellate review of the sufficiency of the evidence is limited in scope. A guilty verdict will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957

P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The evidence discussed above, demonstrating the harmlessness of the evidentiary errors, plainly constitutes substantial evidence of Satcher's guilt upon which a reasonable jury could have found that the prosecution sustained its burden of proof. Thus, the evidence was sufficient to support a conviction for grand theft of lost property.

## III.
## CONCLUSION

The district court erroneously allowed testimony regarding a law enforcement officer's opinion of Satcher's truthfulness, and testimony regarding an order of restitution from a previous case. However, the testimony was harmless whether viewed independently or cumulatively. The evidence presented at trial was sufficient to support a conviction for grand theft of lost property. Accordingly, the judgment of conviction is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

7