IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38282

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 445 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 16, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MARK CLAYTON BOMAN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Judgment of conviction for trafficking in heroin, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Mark Clayton Boman was convicted of conspiracy to traffic in heroin, Idaho Code §§ 18-1701, 37-2732B(a)(6)(C). He asserts that the district court erred by excluding an alibi witness and that the prosecutor committed misconduct during closing arguments.

## I.

## BACKGROUND

On January 20, 2010, a postal inspector obtained a federal search warrant to open a package addressed to Jesse Duran. Upon execution of the search warrant, the inspector discovered approximately one ounce of heroin in the package. The package was resealed and prepared for a controlled delivery. The same day, a man arrived at the post office and inquired about the package, but the postal service employee with whom the man spoke was unable to locate it. When the man left, the employee watched the man get into a white truck and recorded the truck's make and license plate number. The description of the vehicle and the license plate

1

number obtained by the employee matched Boman's vehicle, and the employee identified Boman at trial as the man she spoke with on January 20. The employee testified that she also saw Boman at the post office again on January 21, that she recognized him as the same man she spoke with on January 20, and that he was driving the same white truck both days. The post office also received at least two phone calls on January 20 and 21 from callers inquiring about the package. Boman's phone records demonstrate that a call to the post office was placed from his phone on January 21.

On January 21, officers conducting surveillance at Duran's residence observed Boman arrive at the residence in a white truck. Boman entered the apartment, and left a few minutes later. Undercover officers followed Boman from Duran's residence to the post office. Boman entered the post office and spoke with another postal service employee, who also identified Boman at trial. Boman indicated that he needed to pick up a package for his friend, Jesse Duran. Boman produced Duran's photo identification, took possession of the package, and signed Duran's name to confirm receipt. A law enforcement officer followed Boman after he took the package, and conducted a traffic stop shortly thereafter. Boman was arrested, and the package of heroin was discovered in his truck. Boman was charged with conspiracy to traffic in heroin with co-conspirators Jesse Duran and Vicki Ornelas.

At trial, the district court excluded one of Boman's witnesses because Boman had not provided the State with adequate notice that he intended to call the witness. According to Boman's proffer, the witness would have testified that Boman was in Salt Lake City, Utah on January 20, in direct contradiction to a postal service employee's testimony that Boman was at the post office in Boise on that date. During closing arguments, the prosecutor argued:

> . . . Mark Boman and Vicki Ornelas contacted the Post Office in order to ascertain the location of the package. Has that been proven beyond a reasonable doubt? *Have you heard any evidence that Mark Boman was anywhere else?*
>
> How would, how would . . . a postal worker, who doesn't know Tom from Joe be able to get a license plate who the registered owner is Mark Boman who is friends with Jesse Duran who happened to be into a heroin agreement out of the blue? How does that happen?
>
> I submit it doesn't happen. . . . You see, this isn't a conspiracy to put Mark in a place that he wasn't at. Mark was already there. He was there on the 20th and he was there on the 21st. You know that beyond a reasonable doubt.

(emphasis added). On appeal, Boman asserts that the district court erred by excluding his alibi witness and that his right to receive a fair trial was violated by the prosecutor's comments during closing arguments which capitalized on the exclusion of the alibi testimony.

Boman also complains of the following statements made by the prosecutor in closing: "[Boman] signed for [the package]. He forged Jesse's signature to get that package. He intended to control that package." Boman contends that it constituted misconduct when the prosecutor asserted that Boman "forged" Duran's signature, thereby indicating that Boman had committed an additional crime of forgery.

## II.

## ANALYSIS

For purposes of this appeal, we need not decide whether the district court erred by excluding Boman's alibi witness, or whether the prosecutor committed misconduct by arguing that Boman had not presented an alibi and by suggesting that Boman "forged" Duran's signature. Assuming these acts constituted errors, we conclude that they are harmless. Error will be deemed harmless if the reviewing court can say, beyond a reasonable doubt, that the error did not contribute to the verdict. *State v. Perry*, 150 Idaho 209, 219-21, 245 P.3d 961, 971-73 (2010). Whether trial errors could have affected the outcome of a trial generally depends, in part, upon the strength of the properly admitted evidence of guilt. *See State v. Hooper*, 145 Idaho 139, 146, 176 P.3d 911, 918 (2007); *State v. Gerardo*, 147 Idaho 22, 27, 205 P.3d 671, 676 (Ct. App. 2009); *State v. Green*, 136 Idaho 553, 557-58, 38 P.3d 132, 136-37 (Ct. App. 2001).

The State presented overwhelming evidence of Boman's guilt. Vicki Ornelas, Duran's girlfriend, testified for the State. Her testimony can be summarized as follows: In December 2009, Ornelas heard Boman and Duran discuss plans to purchase approximately one ounce of heroin. Boman and Duran pooled their money, Duran ordered the heroin from California, Boman and Duran wired money for the purchase, and the heroin was delivered through the mail. The same process was used for additional heroin purchases. Ornelas overheard several subsequent conversations in which Boman and Duran discussed pooling their money, and she accompanied Boman and Duran to a store where they wired the money on three or four occasions. In December 2009, Ornelas received delivery of a package mailed to the apartment where she and Duran lived, and she watched Boman and Duran open the package and divide the heroin it contained. Similar looking packages were delivered to the apartment approximately

once a week, and Ornelas opened one of the packages and discovered heroin inside. Each package contained approximately one ounce of heroin, which Boman and Duran divided equally. Ornelas testified that the package seized by the police on January 21, 2010, appeared similar to the other packages containing heroin. Perhaps most importantly, on January 20, Ornelas heard Boman and Duran again discussing a package, and Boman indicated that he "wanted to go in on it." Ornelas explained that Boman was going to pay Duran for half of the heroin after it was delivered.

Testifying for the defense, Duran stated that he asked Boman to pick up the package from the post office but that Boman did not know what the package contained. However, the State introduced evidence that, during the entry of Duran's guilty plea, Duran made several incriminating statements that corroborated Ornelas's testimony, and contradicted his own denial of Boman's knowledge. Duran's previous testimony included statements that, based on Duran's history with Boman, Boman would have had reason to believe the package contained heroin; that Duran had promised to give some of the heroin from the package to Boman; and that that he was "sure [Boman] had knowledge" that a package arriving at the post office would contain heroin.

The State also presented testimony from several postal service employees and law enforcement officers who were involved in the investigation or who had interactions with Boman. One postal service employee delivered Express Mail[1] packages to Duran's apartment on January 8, 2010, and on January 15, 2010. On January 20, 2010, the employee's attention was drawn to yet another Express Mail package, nearly identical to the first two, also addressed to Duran.[2] The employee testified that he became suspicious of the packages because it was unusual for a residential customer to receive a series of Express Mail packages, especially a customer in a "dilapidated" apartment complex, and because the packages were "bulged" and felt "squishy," which was unusual for Express Mail. On January 20, post office employees received at least two calls, one from a man, and one from a woman, inquiring about the package. Both callers apparently left Boman's phone number as a contact number. One employee testified that

---

[1] The employee explained that Express Mail is the postal service's only guaranteed overnight delivery service.

[2] The State also introduced business records from the post office indicating that packages sent from California were delivered to Duran's address in November and January.

4

Boman attempted to pick up the package on January 20, and she obtained an accurate description of Boman's vehicle including the license plate number. On January 21, law enforcement officers observed Boman briefly visit Duran's residence before going to the post office,[3] and several postal service employees and law enforcement officers testified that Boman retrieved the package of heroin at the post office. The officer who followed Boman from the post office and initiated a traffic stop testified that despite use of the patrol car's overhead lights and siren, Boman did not stop until another police vehicle forced him off the road.

In light of the evidence presented at trial--particularly the disinterested postal employee's testimony that she saw Boman on January 20, and her accurate description of his vehicle, including the license plate number--it is likely that the use of the excluded alibi witness would only have discredited the defense in the eyes of the jury. Even highly credible evidence that Boman was in Utah on January 20, 2010, would not have been particularly important for two reasons. First, Ornelas testified that on January 20, she heard Boman and Duran discussing an agreement to split a package of heroin. Even if we assume that this conversation was by telephone and that Boman was then in Utah, his presence in Utah during the conversation would not relieve him of criminal liability when he then returned to Boise and retrieved the package in furtherance of the conspiracy.[4] Second, the evidence that Boman and Duran had ordered and received heroin on a near-weekly basis demonstrated an agreement through the course of their conduct over the previous month, making Boman's location on January 20 of little significance.

With respect to the prosecutor's comments during closing arguments, we note that there was no objection at trial, and thus Boman carries the burden of proving there is a reasonable possibility that the error contributed to the verdict. *Perry*, 150 Idaho at 226, 245 P.3d at 978. He has not done so here. Although the prosecutor indicated that Boman "forged" Duran's signature,

---

[3]     Ornelas testified that on January 20, she and Duran, who are both heroin addicts, arranged to purchase two ounces of heroin from Boman, and that on January 21, Boman stopped at their apartment to give them the heroin before going to the post office.

[4]     Idaho Code § 18-202 provides: "The following persons are liable to punishment under the laws of this state: (1) All persons who commit, in whole or in part, any crime within this state. . . . (3) All who, being out of this state, cause or aid, advise or encourage, another person to commit a crime within this state and are afterwards found therein." *See also Hyde v. United States*, 225 U.S. 347, 363 (1912) ("[A] conspiracy is not necessarily the conception and purpose of the moment, but may be continuing. If so in time, it may be in place,--carrying to the whole area of its operations the guilt of its conception . . . .").

when viewed in context, the poorly worded comment conveyed only that Boman signed Duran's name instead of his own. The prosecutor did not at any other point refer to the signature as a forgery or suggest that Boman's signing Duran's name constituted a crime in itself. The statement of which Boman complains, though inappropriate, was a passing remark, and jurors knew that the evidence showed that Boman had signed Duran's name with Duran's permission. We conclude that this remark would have had no influence on a rational juror's determination of whether Boman was guilty of the charged offense of conspiracy to traffic in heroin.

Because the evidence of Boman's guilt was so overwhelming, we are convinced beyond a reasonable doubt that the exclusion of Boman's "alibi" witness and the prosecutor's comments in closing argument, even if erroneous, did not contribute to the guilty verdict or deprive Boman of a fair trial.

## III.

## CONCLUSION

Even if we assume the district court erroneously excluded a witness from trial and that the prosecutor committed misconduct during closing argument, the alleged errors were harmless whether viewed independently or cumulatively. Accordingly, the judgment of conviction is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**